UNITED STATES v. DIETRICH et al.

(Circuit Court, D. Nebraska. January 4, 1904.)

1. CONSPIRACY—BRIBERY OF MEMBER OF CONGRESS — AGREEMENT TO GIVE AND RECEIVE BRIBE.

Rev. St. § 1781 [U. S. Comp. St. 1901, p. 1212], makes it a criminal offense for a member of Congress to take, receive, "or agree to receive" any money, property, or other valuable consideration for procuring or aiding to procure any office from the government, and also a like offense for any person to offer, give, "or agree to give" any money or other consideration to any member of Congress for procuring or aiding to procure such office. *Held*, that an agreement between a member of Congress and another, the one to receive a bribe for aiding to procure an office and the other to pay the same, constitutes a substantive offense under said section by each of the parties thereto, and cannot be made the basis of an indictment under section 5440 [U. S. Comp. St. 1901, p. 3676] for a conspiracy to commit an offense against the United States.

2. INDICTMENT—JOINDER OF SEVERAL OFFENSES BY DIFFERENT DEFENDANTS IN SINGLE COUNT.

Two persons cannot be severally charged in the same indictment under Rev. St. § 1781 [U. S. Comp. St. 1901, p. 1212], and in a single count, the one with agreeing to receive a bribe as a member of Congress and the other with agreeing to give such bribe, which constitute distinct and several offenses.

Indictment for conspiracy under section 5440 of the Revised Statutes [U. S. Comp. St. 1901, p. 3676], returned into the District Court November 16, 1903, and remitted to the Circuit Court under section 1038 [U. S. Comp. St. 1901, p. 723]. The offense charged, as set forth in the indictment, is:

"That Charles H. Dietrich and Jacob Fisher, late of the said district of Nebraska, within said judicial circuit, heretofore, to wit, on the twentieth day of April, in the year of our Lord one thousand nine hundred and one, at the city of Hastings, Adams county, within the district and state of Nebraska, and within the jurisdiction of this court then and there being, and the said.Charles H. Dietrich then and there being a member of Congress of the United States of America, to wit, a member of the Senate of the said United States of America, then and there duly elected, qualified, and sworn according to law to perform the duties of his said office, and he, the said Charles H. Dietrich, and he, the said Jacob Fisher, did then and there unlawfully, corruptly, and wickedly conspire, combine, confederate, and agree together and with each other to commit an offense against the United States and to violate a law of the United States, to wit, section one thousand seven hundred and eighty-one of the Revised Statutes of the United States, by the said Charles H. Dietrich then and there fraudulently, willfully, corruptly, unlawfully, and knowingly agreeing with the said Joseph Fisher to take and receive the sum of one thousand three hundred dollars from the said Jacob Fisher for procuring and aiding to procure a certain office for the said Jacob Fisher, to wit, the office of United States postmaster at Hastings, state of Nebraska, from the government of the United States, and the said Jacob Fisher by then and there agreeing to give to the said Charles H. Dietrich the said sum of one thousand three hundred dollars for procuring and aiding to procure a certain office for him, the said Jacob Fisher, to wit, the said office

of United States postmaster at Hastings, state of Nebraska, from the government of the United States, he, the said Jacob Fisher, then and there well knowing the said Charles H. Dietrich to be a member of Congress of the United States of America, to wit, a member of the Senate of the said United States of America, as aforesaid."

This is followed by the specification of an overt act charged to have been done by Fisher to effect the object of the conspiracy. In support of a demurrer to the indictment the defendants urge: (1) An agreement between a member of Congress and another person whereby the former agrees to receive from the latter, and the latter agrees to give to the former, a bribe under the circumstances described in the indictment, cannot be made the subject of a prosecution for conspiracy under section 5440. (2) Two defendants are in a single count of the same indictment severally charged with distinct and several offenses.

W. S. Summers, U. S. Atty., and S. R. Rush, Asst. U. S. Atty.

John C. Cowin and R. A. Batty, for defendants.

Before VAN DEVANTER, Circuit Judge, and MUNGER, District Judge.

VAN DEVANTER, Circuit Judge (after stating the facts as above). This indictment is predicated upon section 5440 of the Revised Statutes [U. S. Comp. St. 1901, p. 3676], which, as amended by the act of May 17, 1879, c. 8, 21 Stat. 4 [U. S. Comp. St. 1901, p. 3676], provides.

"If two or more persons conspire either to commit an offense against the United States or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars, or to imprisonment for not more than two years or to both fine and imprisonment in the discretion of the court."

The gravamen of the charge is that the defendants conspired—united in purpose and agreed together—to commit an offense against the United States, and the object of the conspiracy is stated to have been—

"To violate a law of the United States, to wit, section one thousand seven hundred and eighty-one of the Revised Statutes of the United States, by the said Charles H. Dietrich then and there fraudulently, willfully, corruptly, unlawfully, and knowingly agreeing with the said Jacob Fisher to take and receive the sum of one thousand three hundred dollars from the said Jacob Fisher for procuring and aiding to procure a certain office for the said Jacob Fisher, to wit, the office of United States postmaster at Hastings, state of Nebraska, from the government of the United States, and the said Jacob Fisher by then and there agreeing to give to the said Charles H. Dietrich the said sum of one thousand three hundred dollars for procuring and aiding to procure a certain office for him the said Jacob Fisher, to wit, the said office of United States postmaster at Hastings, state of Nebraska, from the government of the United States."

Section 1781 of the Revised Statutes [U. S. Comp. St. 1901, p. 1212] makes it an offense against the United States (1) for a member of Congress or any officer or agent of the government to directly or indirectly take, receive, or agree to receive any money, property, or other valuable consideration whatever, from any person, for procur-

ing or aiding to procure any contract, office, or place from the government or any department thereof, or from any officer of the United States, for any person whatever, or for giving any such contract, office, or place to any person whomsoever; (2) for any person to directly or indirectly offer or agree to give, or give, or bestow any like consideration for the procuring, or aiding to procure, any such contract, office, or place; and (3) for any member of Congress to directly or indirectly take, receive, or agree to receive any such consideration after his election as such member, for his attention to, services, action, vote, or decision on any question, matter, cause, or proceeding which may then be pending, or may by law or under the Constitution be brought before him in his official capacity, or in his place as such member of Congress. The section therefore describes three principal offenses, each composed of essential elements enumerated in its description. To charge that the object of a conspiracy was to violate this section, without saying more, leaves it uncertain which of these offenses is intended to be described, and whether the essential elements of any of them are present. The rules of criminal pleading require greater certainty and precision than this, and the statement in this indictment that the object of the conspiracy was to violate section 1781, while not harmful, adds nothing to the indictment. Eliminating this, the charge is that the defendants conspired—united in purpose and agreed together—to commit an offense against the United States, by Dietrich agreeing to receive a bribe from Fisher for procuring the appointment of the latter as postmaster, and by Fisher agreeing to give to Dietrich this bribe for that service. In other words, the conspiracy charged is an agreement between a member of Congress and a citizen, whereby a stated bribe was to be received by the former and given by the latter as the price of the former's abusive or perversive use of the influence incident to his official station. The making of such an agreement is not a conspiracy within the terms of section 5440, but is a several and substantive offense under section 1781 upon the part of each of the parties, and this without the doing of any overt act in pursuance thereof. The latter section, as before stated, specifically covers the act of a member of Congress who receives, or agrees to receive, any money, property, or other valuable consideration for procuring or aiding to procure for another an office from the federal government; and it also specifically covers the act of any person who gives, or agrees to give, a like consideration for such service or aid. As the transaction is stated in the indictment, it was Dietrich who agreed to receive the bribe, not Dietrich and Fisher, and it was Fisher who agreed to give the bribe, not Fisher and Dietrich. The charge is not that two or more persons agreed among themselves to corruptly obtain the aid of another, a member of Congress, in securing the appointment of some aspirant to a federal office, nor is it that two or more members of Congress agreed among themselves to obtain from another person a reward or compensation for their services or aid in securing such an appointment. Such an agreement would constitute a conspiracy to commit an offense against the United States, and, if followed by the doing of any act by one of the conspirators to effect its object, would be

punishable under section 5440. There is therefore nothing in the suggestion that if the agreement charged in this indictment does not constitute a conspiracy within section 5440 there can be no conspiracy to commit any of the offenses defined in section 1781. The agreement or transaction stated in this indictment was immediately and only between two persons, one charged with the intended taking and the other with the intended giving of the same bribe. Concert and plurality of agents in such an agreement or transaction are, in a sense, indispensable elements of the substantive offenses, defined in section 1781, of agreeing to receive a bribe and of agreeing to give one. A person cannot agree with himself, receive from himself, or give to himself. The concurrent and several acts of two persons are necessary to the act of agreeing, receiving, or giving. In this respect, agreeing to receive a bribe from another and agreeing to give one are unlike soliciting or offering a bribe, because the solicitation or offer may be the act of a single person and may occur without any concurrent act of another. The rule stated by Wharton (2 Cr. L. § 1339) is applicable here:

"When to the idea of an offense plurality of agents is logically necessary, conspiracy, which assumes the voluntary accession of a person to a crime of such a character that it is aggravated by a plurality of agents, cannot be maintained. As crimes to which concert is necessary (i. e., which cannot take place without concert), we may mention dueling, bigamy, incest, and adultery, to the last of which the limitation here expressed has been specifically applied by authoritative American courts. We have here the well-known distinction between concursus necessarius and concursus facultativus —in the latter of which the accession of a second agent to the offense is an element added to its conception; in the former of which the participation of two agents is essential to its conception; and from this it follows that conspiracy, the gist of which is combination, added to crime, does not lie for concursus necessarius. In other words, when the law says 'a combination between two persons to effect a particular end shall be called, if the end be effected, by a certain name,' it is not lawful for the prosecution to call it by some other name; and when the law says such an offense—e. g., adultery— 'shall have a certain punishment,' it is not lawful for the prosecution to evade this limitation by indicting the offense as conspiracy. Of course, when the offense is not consummated, and the conspiracy is one which by evil means a combination of persons is employed to effectuate, this combination is of itself indictable; and hence persons combining to induce others to commit bigamy, adultery, incest, or dueling do not fall within this exception, and may be indicted for conspiracy."

Other authorities to the same effect are 2 McClain's Cr. L. § 959; Shannon v. Commonwealth, 14 Pa. 226; Miles v. State, 58 Ala. 390. See, also, State v. Butler, 8 Wash. 194, 35 Pac. 1093, 25 L. R. A. 434, 40 Am. St. Rep. 900. The fact that section 1781 makes the act of agreeing to receive, and also that of agreeing to give, a bribe, under the circumstances and for the purpose described in this indictment, a substantive offense, even though the bribe be not actually received or given, brings this case fully within the rule so stated. Because concert and plurality of agents, in the sense we have hereinbefore shown, are essential to each of the offenses—there are two, not one—the commission of which is charged to have been the object of this so-called conspiracy, and because no other concert and plurality of agents are here charged, we are of opinion that the acts

described in this indictment do not constitute a conspiracy under section 5440.

The second point urged by counsel for the defendants is that, if the particular statements in the indictment intended to make it one for conspiracy be ineffectual and be disregarded, still the indictment cannot be sustained because the acts therein charged do not constitute a joint offense by the two defendants, but a distinct and several offense by each. Unquestionably the agreement or transaction described consists of two distinct and several acts by separate persons. In every executory agreement the promises therein reciprocally given and received are severally the acts of the parties making them, and not of those to whom they are made. This indictment fully recognizes this when it attributes to Dietrich the act of agreeing to receive the bribe named, and attributes to Fisher the act of agreeing to give it. No effort is made to charge either with the promise of the other. In the very nature of things the two acts are several, not joint. The statute is in terms leveled against the several acts of the intended bribe taker and the intended bribe giver, and makes each a distinct or separate offense. While parts of one transaction, the two acts constitute several offenses, for which those by whom they are committed must respond severally, not jointly. Of course, all who join in either offense may be jointly indicted; but can two or more defendants be in the same indictment severally charged with distinct and several offenses of the same class and grade, subject to the same punishment, occurring at the same time and place, and forming parts of the same transaction? As then stated, we were at first strongly of opinion that this cannot be done, but a search among text-books and reported cases, and further reflection, has considerably shaken our first impression. Upon this subject Chitty says (1 Cr. L. 270, also 254):

"Several offenders may also, for different offenses of the same kind, be in some cases included in the same indictment, the word 'severally' being inserted, which makes it several as to each of them, though the court will, in its discretion, quash the indictment if any material inconvenience appear to rise from the mode in which it is preferred. Thus, it has been holden that four persons may be joined for erecting four inns, which prove to be common nuisances, if the word 'severally' be inserted, though the want of that word will vitiate. And the same rule applies to the keeping of disorderly houses, the same term being inserted. But it seems that to warrant such joinder the offenses must be of the same nature, and such as will admit of the same plea and sentence, or it may operate like a misjoinder in civil proceedings, and be bad upon demurrer, or after a general verdict, in arrest of judgment. In all these cases, however, the charge is several against each individual, and the jury may acquit some, while others are found guilty."

This practice is expressly recognized in 2 Hale's Pleas of the Crown, 174, and 1 Starkie, Crim. Pl. (2d Ed.) 43 et seq., and is mentioned in 2 Hawkins, c. 25, § 89. Rex v. Kingston, 8 East, 41, 46, is a case in which it was objected that the indictment in several counts charged different defendants with distinct and several offenses. The objection was disposed of in this manner:

"Lord Ellenborough, C. J. This would have been a good ground of application to the discretion of the court to quash the indictment for the inconvenience which may arise at the trial from joining different counts against

different offenders; but where, to the offenses so charged in different counts, there may be the same plea and the same judgment, there is no authority for saying that such joinder in one indictment is bad in point of law; nor is there any legal incongruity on the face of it to warrant us in giving judgment for the defendants on demurrer.

"Lawrence, J., referred to several authorities to show the legal incongruity of such a joinder of counts, though he agreed that it was a matter of discretion for the court on motion to quash an indictment so framed. In 2 Roll. Rep. 345, the case is stated of an indictment against four persons for erecting four several inns, and selling victuals to travelers ad commune nocumentum, and it was quashed because it was not alleged that they separaliter did the acts, and several acts are attributed to them jointly; for though four for several offenses may be indicted in the same indictment, it is as several indictments in law, and the form shall be separaliter exererunt. And Lord Hale (2 Hale P. C. 174), after giving some instances of indictments against several for separate acts of the same kind, which were quashed, refers to the same case which is reported in 2 Roll. as laying down the rule that for several offenses of the same nature several persons may be indicted in the same indictment; but then he says it must be laid 'separaliter,' for want of which word that indictment was quashed. And he adds that 'it is in common experience at this day that 20 persons may be indicted for keeping disorderly houses, etc., and they are daily convicted upon such indictments; for the word 'separaliter' makes them several indictments.'

"The other judges concurring to overrule this objection."

Such are the English authorities to which we have had access. The practice there shown has also been recognized in the United States. It is mentioned by Bishop (1 New Crim. Pro. §§ 473–476) and by Clark (Crim. Pro. 304). In Redman v. State, 1 Blackf. 429, the court followed this common-law practice, and sustained an indictment which in separate counts severally charged one defendant with larceny, and another with receiving the stolen goods, knowing them to be stolen. It was there said:

"The point on which the principal reliance was placed is the joinder of two counts in the same indictment—one against Warner for larceny; the other against Redman and others as receivers. But this objection is unavailable. The two crimes are of the same nature; they require the same plea, the same judgment, and the same quantum of punishment. The charge of larceny against Warner, in the first count, cannot mislead or perplex the receivers in their defense, nor change the nature of their case, in any respect, from what it would have been if the larceny had been set forth by way of recital. See 1 Chitt. C. Law, 254; 8 East, 41."

In Commonwealth v. Gillespie, 7 Serg. & R. 469, 477, 10 Am. Dec. 475, the court gave its approval to this practice, saying:

"Nor is the objection maintained that several persons could not be severally indicted in the same bill for separate offenses; for though it might be in the discretion of the court to quash such indictment, yet it cannot be taken advantage of in arrest of judgment, for they are considered as several indictments in point of law."

Other decisions tending somewhat to sustain this practice are Commonwealth v. Elwell, 2 Metc. (Mass.) 190, 35 Am. Dec. 398; Commonwealth v. Devine, 155 Mass. 224, 29 N. E. 515; State v. Bartlett, 53 Me. 446; Johnson v. State, 13 Ark. 684; State v. Nail, 19 Ark. 563; Lewellen v. State, 18 Tex. 538.

We do not find any mention of this practice in the reported decisions of the federal courts, nor do we find in them any determination of the question before stated, viz.: Can two or more defendants

be in the same indictment severally charged with distinct and several offenses of the same class and grade, subject to the same punishment, committed at the same time and place, and forming parts of the same transaction? The question decided in United States v. Kazinski, 26 Fed. Cas. p. 682 (No. 15,508), and United States v. Davis (D. C.) 33 Fed. 621, is whether two or more defendants may be jointly charged with an offense in its nature several, and not possible of joint commission in the manner charged. The difference is obvious. The nearest approach to the question in the reported decisions of the federal courts seems to be in Pointer v. United States, 151 U. S. 396, 400–404, 14 Sup. Ct. 410, 38 L. Ed. 208; McElroy v. United States, 164 U. S. 76, 17 Sup. Ct. 31, 41 L. Ed. 355; and Williams v. United States, 168 U. S. 382, 390, 18 Sup. Ct. 92, 42 L. Ed. 509. In each of the cases of Pointer and Williams there was but one defendant, and the question, in legal effect, was whether he could in different counts of the same indictment be charged with different offenses, and it was held that he could, subject to certain limitations carefully stated by the court and fully within the terms of the question herein propounded. In the case of McElroy the question, in legal effect, was whether, in an indictment against five persons, counts charging all of them with felonious assaults and arson committed at one time can be united with another count charging three of them with another and distinct arson at a different time. The offenses of the five and of the three, as stated by the court, were not parts of the same transaction or connected together, but were independent of each other and not provable by the same evidence. The ruling was that such a joinder of offenses is not permissible. These cases do not answer the question now under consideration. It seems to be still an open one in the federal courts. Much can be said in support of a practice which, subject to a discretion invested in the court to enable it to do justice between the government and the accused, permits two or more defendants to be in separate counts of the same indictment severally charged with distinct and several offenses of the same class and grade, and subject to the same punishment, where the offenses appear to have been committed at the same time and place and to form parts of the same transaction. Under such circumstances the proof in respect to one offense would almost necessarily throw light upon the other or others, and the connection between them would frequently be so close that it would be difficult or impossible to separate the proof of one from the proof of the other or others. These are the considerations advanced by Mr. Justice Harlan in the Pointer Case in support of the ruling that the same defendant or defendants may, under the like concurrence of time, place, and circumstances, be charged in separate counts of the same indictment with different offenses of the same class or grade and subject to the same punishment. But we do not deem it necessary or wise to decide the question at this time. It is important, new to us, and not free from difficulty. This indictment was manifestly drawn with the sole purpose of charging a conspiracy under section 5440. It is only by giving to statements therein, bordering somewhat upon indirection and recital, the effect of direct allegations, that the indictment may

be said to charge the substantive offenses of agreeing to receive and agreeing to give a bribe under section 1781. While the statement of the acts of the defendants in this regard is such as to show that they were several, both offenses are improperly charged in a single count. We infer from the argument of counsel upon this demurrer that much of the proof to sustain this indictment consists of statements and acts of one of the defendants made and done in the absence of the other— matters which it is not infrequently difficult for the jury to apply to the defendant by whom the statements are made or the acts done, and not to another. It seems to us that material inconvenience and embarrassment would probably arise from a trial of the defendants upon this indictment. The general rule that two or more defendants cannot be severally charged in the same indictment with distinct and several offenses is well recognized, and, under the circumstances recited, the practice to which we have referred, even if here sustained, would not save this indictment from rejection. This conclusion is reached with less hesitation by reason of the fact that other indictments are now pending in this court, one against Dietrich and another against Fisher, separately and directly charging them with these offenses, upon which trials can be had freed from difficulties which may arise upon a trial upon this one.

The demurrer is sustained.