# Court of Appeals.

August 5, 1904.

# THE PEOPLE v. WILLIAM M. DEGARMO.

(179 N. Y. 130).

TRIAL—WHEN TESTIMONY OF DEFENDANT ON CROSS EXAMINATION AS TO OTHER OFFENSES CANNOT BE CONTRADICTED BY THE PROSECUTION.

Where upon the trial for an indictment for manslaughter, the credibility of the defendant as a witness is assailed by compelling

him upon cross examination to give testimony which, although competent for the purpose of impeachment, is collateral to the main issue, the prosecution, at whose instance the collateral evidence is elicited, is bound thereby and has no right to contradict it.

Reversing People v. De Garmo, 73 App. Div. 46; s. c. 16 N. Y. Crim. Rep. 531.

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 22, 1902, which affirmed a judgment of the Livingston County Court convicting the defendant of the crime of manslaughter in the first degree.

The facts, so far as material, are stated in the opinion.

George D. Forsyth for appellant. The court erred in the admissibility of testimony upon the trial of the action which seriously prejudiced the defendant's case. (People v. Sharp, 107 N. Y. 427; People v. Shulman, 80 N. Y. 376; People v. Gibbs, 93 N. Y. 470; Coleman v. People, 52 N. Y. 82; People v. Bean, 67 N. Y. S. R. 36; State v. La Paige, 72 Penn St. 60; Commonwealth v. Jackson, 132 Mass. 16; Compton v. Ward, 30 N. Y. 283; Stokes v. People, 53 N. Y. 164; People v. Greenwald, 108 N. Y. 302.)

John F. Connor for respondent. The unanimous decision of the Appellate Division, that the verdict of the jury is sustained by the evidence, is conclusive here, the judgment not being of death. (People ex rel. v. Barker, 152 N. Y. 517.) The court did not err in admitting testimony contradicting statements made by the defendant on his cross-examination. (People v. Webster, 139 N. Y. 84; People v. Tice, 131 N. Y. 657; People v. McCormick, 135 N. Y. 663; People v. Casey, 72 N. Y. 393.)

WERNER, J.

The indictment herein charges the defendant with the crime of manslaughter in the first degree, and the specification is that on the 25th day of October, 1900, the defendant, "with force and arms and while engaged in committing a misdemeanor on the person of one Marie Lennon, to wit, an assault, did then and there feloniously, in the heat of passion and in a cruel and unusual manner, strike, beat, kick and wound said Marie Lennon upon the body and head, and did otherwise injure her," inflicting one or more · mortal wounds which caused her death.

The defendant demurred to the indictment on several grounds; the demurrer was overruled; the defendant was tried, convicted and sentenced to imprisonment for twenty years; and the judgment of conviction was unanimously affirmed by the Appellate Division.

Among the alleged errors relied upon by the defendant as grounds for the reversal of the judgment herein there are three that may be summarily disposed of before we reach the real difficulty in the case : 1. The unanimous affirmance by the Appellate Division precludes us from considering the trial court's refusal to grant the defendant's motion to advise an acquittal based upon the alleged insufficiency of the evidence. (People v. Helmer, 154 N. Y. 599.) 2. As there was no exception taken to the charge of the trial court to the jury, to the effect that the defendant could not be found guilty of any lesser degree of manslaughter than the first, we cannot consider the point and do not pass upon it. (Code Crim. Pro. sec. 528.) 3. The demurrer to the indictment is not tenable. The indictment is drawn in substantial compliance with the provisions of the Code of Criminal Procedure. (Secs. 278,279,284.) Its alleged imperfections are mere matters of form which have no tendency to prejudice the substantial rights of the defendant. (Sec. 285.)

A more serious question is raised by the exceptions to the admission of certain evidence that is claimed to have been not only incompetent, but seriously and substantially prejudicial to the defendant. The defendant was a witness in his own behalf. Upon his direct examination he testified as to the occasion mentioned in the indictment and nothing else. On his cross-examination he was interrogated as to a number of alleged occurrences which had no legal connection with the homicide, and his testimony thus elicited was then permitted to be contradicted by witnesses called in rebuttal for the prosecution. As a part of the defendant's cross-examination he was asked : "Q. Do you remember the time when they (George Hunt and Bert Chase) were there, one or both of them, that you picked up a hammer and threw it at Marie Lennon striking about six feet from her? A. No, sir, I do not. Q. Did you? A. No, sir, I did not. Q. Do you remember an occasion when, in the presence of Ora Messerve, little Marie Lennon appeared and in speaking of her clothes as dirty she pronounced the word 'dirky,' whereupon you stated ' I will teach you to pronounce words right,' do you remember that? A. No, sir, I do not. Q. Did you at that time (in the presence of Messerve and shortly before the 26th of October) strike her on the jaw with your fist, forcing her against the wall? A. No, sir, I never struck her with my fist. Q. And never forced her against the wall? A. No sir. Q. And at the same time did not Messerve say to you, 'what is the use of hitting her,' and you said 'they are put here to mind and I will fix them so they will mind,' or words to that effect? A. No, sir." The defendant also testified on his cross-examination that he did not whip the child on Wednesday evening after he returned from fishing with Chase and that the child did not say "Montie, stop, stop."

When the defense had rested its case, Ora Messerve was

called for the prosecution and testified that she remembered an occasion "some time shortly prior to the death of Marie Lennon" when she had a conversation with the defendant. "Q. Do you remember an occasion when you were there at his cottage, or thereabouts, a short time prior to the death of Marie Lennon when the little girl, Marie Lennon, appeared and came to a point near by and spoke of her clothes as dirty, pronouncing the word 'dirky' and at the same time the defendant said 'I will teach you to pronounce words right,' at the same time striking her on the jaw or face with his fist and forcing her against the wall?" The objection that this was incompetent and irrelevant was overruled, an exception was taken by defendant's counsel, and the witness answered, "Yes, sir." Then the witness was asked, "And upon the same occasion you stated to the defendant, 'what is the use of hitting her,' and the defendant said, 'they are put here to mind and I will fix them so they will mind.'" Subject to the same objection and exception the witness answered, "Yes, sir."

The witness Bert Chase was called for the prosecution and testified as follows: "Q. Do you remember an occasion when you and George Hunt and the defendant were tegether at or near the De Garmo cottage on Conesus Lake, when the defendant picked up a hammer and threw it at Marie Lennon striking about six feet from her? A. Yes, sir. Q. Did you hear this child Marie Lennon cry that (Wednesday) evening? A. Yes, sir. * * * Well, sir, when we came in from fishing, we separated and DeGarmo went to his cottage and I put the fish into the ice-box and went to the barn, and when I came back from leading my horse from the Lake I heard cries coming from DeGarmo's cottage crying, 'Montie, please don't, please don't.' I locked the barn and started for my cottage and I heard the blows and cries still sounding, and they were until I went to the house." All of this evidence was received over the

objections and exceptions of defendant's counsel.

In considering the question whether the rebuttal evidence above quoted was competent, and whether the alleged error in its admission is fatal to the judgment, the issue that was tried and the necessary effect of this evidence are to be kept in view. The issue was whether the defendant, at the time and in the manner specified in the indictment, had committed the crime of manslaughter in the first degree. None of the elements of intent, motive, premeditation or deliberation were involved in the inquiry, and the evidence in chief of the prosecution was, therefore, properly confined to the facts and circumstances that bore directly upon the assault which resulted in the homicide. As there was no connection of time, place and circumstance between the homicide and other offenses of which the defendant may have been guilty, it is obvious that evidence of these other offenses was incompetent (People v. Molineux, 168 N. Y. 264), unless it was admissible for the purpose of impeaching the credibility of the defendant. As a witness he was subject to the usual test of cross-examination and could, unless he claimed his privilege, be compelled to disclose ''any vicious or criminal act of his life.'' (People v. Webster, 139 N. Y. 73, 84.) But such testimony was not material to the main issue and bore simply upon his credibility. The evidence was not competent to prove that he was criminally inclined, or to establish his probable guilt of the crime charged because of his commission of other offenses, but only to show that his testimony was unworthy of belief. (People v. Greenwall, 108 N. Y. 296; Stokes v. People, 53 N. Y. 164; People v. Ware, 29 Hun, 473; affirmed, 92 N. Y. 653; Wharton's Cr. Ev. [9th ed.] sec. 484.)

At this point we encounter one of the limitations of the rule governing the impeachment of witnesses that was lost sight of in the case at bar. When the credibility of the defendant as a witness was assailed by compelling him upon

his cross-examination to give testimony which, although competent for purposes of impeachment, was collateral to the main issue, the prosecution, at whose instance the collateral evidence was elicited, was bound thereby and had no right to contradict it. This is an inflexible limitation of the rule referred to and illustrations thereof are to be found in Lawrence v. Barker (5 Wend. 301); Howard v. City Fire Ins. Co. Co. (4 Den. 502); Stokes v. People (supra); People v. Greenwall (supra) and People v. Ware (supra).

The effect of the incompetent evidence upon the defense is so apparent that it need not be discussed at length. The case of the prosecution depended largely upon the evidence of Frankie Lennon, the brother of the deceased. At the time of the trial he was only eight years of age. His evidence was typical of what would naturally be expected from a child of that age. The corroborating evidence was wholly circumstantial. The defendant denied that he was guilty of the crime charged. The issue was narrow and clearly defined; the evidence on both sides was meagre. Under these conditions the admission of incompetent testimony, which bore with deadly effect upon the character and disposition of the defendant, could not have failed to exercise a direct and controlling influence upon the minds of the jury in weighing the probabilities as to the defendant's guilt or innocence. The admission of such evidence raises a conclusive presumption of injury to the defendant and renders the reversal of the judgment herein an imperative necessity.

The judgment of conviction herein should be reversed and a new trial ordered.

PARKER, Ch. J., GRAY, BARTLETT, MARTIN, VANN and CULLEN, JJ., concur.

Judgment of conviction reversed, etc.

## NOTE ON EFFECT OF UNANIMOUS AFFIRMANCE.

In the Helmer case, it was held by the majority of the court, that a unanimous affirmance by the Appellate Division, precluded the court from looking into the record to see if there was any evidence to support the findings of fact. (People v. Helmer, 154 N. Y. 596; 13 N. Y. Crim. R. 1,) O'Brien, J., wrote a long dissenting opinion. Subsequently, in the Syndicate Miller case, the court, writing by O'Brien, J., again discussed the question, and appears to have ignored, the ruling in the Helmer case. (People v. Miller, 169 N. Y. 339; 16 N. Y. Crim. R. 281.)

Finally in this DeGarmo case (supra) the Court appears to have ignored the intimations in the Miller case, and has reiterated the doctrine as laid down in the Helmer case.

R. C. T.

---

# Supreme Court, Special Term, New York County.

June, 1904.

## THE PEOPLE, EX REL. NAN PATTERSON

## v. WILLIAM FLYNN, WARDEN.

(44 Misc. 20)

CORONER—WHEN JUSTIFIED IN COMMITTING PERSON CHARGED WITH HOMICIDE.—CODE CRIM. PRO. SEC. 773.

An affidavit of a police officer, presented to a coroner upon an inquisition had by him, stating that the officer found an uncon-