## COURT OF SPECIAL SESSIONS — CITY OF NEW YORK — APPELLATE TERM — FIRST JUDICIAL DEPARTMENT.

### August 22, 1922.

### THE PEOPLE v. CHARLES KROPP.

(1) TRIAL—EVIDENCE—PROOF OF OFFENSE DISTINCT FROM THAT CHARGED IMPROPER.

Defendant was charged with disorderly conduct when complainant entered his apartment. On the trial complainant's mother testified in full detail of an attack made on her several hours before in the absence of complainant, when she testified defendant had been guilty of indecent and outrageously insulting behavior to her. *Held* error; the admission of proof of another crime unrelated to the instant case is reversible error.

(2) SAME—NOTIFYING DEFENDANT OF HIS RIGHTS.

Failure by the magistrate to comply with section 188, Code Crim. Pro., is not error in a proceeding of a summary character.

Before Honorables JOHN J. FRESCHI, Presiding Justice; FREDERICK KERNOCHAN and CLARENCE EDWARDS, Justices.

APPEAL from judgment of a city magistrate convicting the defendant of disorderly conduct tending to a breach of the peace.

*Gustav J. Voss*, for appellant.

*John C. Myers, Deputy Assistant District Attorney*, for respondent.

FRESCHI, J.:

At the City Magistrates' Night Court for Men (Tenth District) the appellant, Charles Kropp, was convicted by City

Magistrate H. Stanley Renaud of disorderly conduct on the complaint of Robert J. Rubinstein, who charged that on the evening of July 6, 1922, at 745 Riverside Drive, the defendant did choke and strike him on the forehead with his clenched hand. The defendant was thereupon committed to the workhouse for five days.

It appears that, when Rubinstein returned home that evening, he found his mother crying; and, because of what she told him, he went down to the apartment of the building superintendent, who is the defendant, and asked him: " What do you mean by insulting my mother? " Complainant claims that he was ordered to leave and struck on the shoulder by the defendant. His testimony is that, as he tried to get out of defendant's premises, he was dragged to the dining room and then pinioned against the wall and twice struck on the temple by the defendant. Again the complainant made an effort to get out, when, as he states, the defendant dragged him to the bathroom, threw him into the tub and " had both his hands on my throat." He admits striking back at defendant's face while trying to release himself from his hold. Then it was that the outcries of the complainant attracted his mother, who then appeared on the scene.

Mrs. Hannah Rubinstein, called as a witness for the People, was interrogated by the magistrate as follows: " Q. Will you tell us what happened in reference to this defendant this afternoon? A. I came down. He was down in the cellar. He lives in the cellar. * * * I asked him to send me the exterminator. For a couple of months he did not send me. So he did not answer. He loosed his trousers and I cannot express what he did to me. By the Magistrate: Q. Go ahead and tell us exactly what took place. I have got to know all about it. A. He loosed his trousers and he showed me his behind, and I came out of there crying until my son came and he asked me, ' Mama, what is the matter? ' * * * I told

him all about it  *  *  * .   He went down to ask him why he did it."

Later, she heard her son screaming and went down again and witnessed, as she testified, the assault on her son.   Policeman Walter McDonald came on the scene, and both complainant and defendant made counter-charges.

Before the magistrate the defendant testified that the complainant came downstairs, entered his apartment without knocking on the door, and charged defendant with having insulted his mother.   He did not leave when ordered to do so; but, on the other hand, struck defendant, and then, the defendant stated, he " pulled him down in the dining room, and then I pulled him in the toilet, in the bathroom, and leave him there " until the officer came.   In the fight the defendant got a black eye and a bloody nose.   Defendant denied the indecency alleged by Mrs. Rubinstein.

A reversal is sought, first, upon the ground that the magistrate did not warn the defendant of his rights; and, secondly, that he did not have a fair trial.

Defendant was, upon his arraignment, notified of his rights under section 181 of the Inferior Courts Act.   Failure on the part of the magistrate to comply with section 188 of the Code of Criminal Procedure is not error in a proceeding of a summary character.   In People v. Johnston (187 N. Y. 319, 321), it was held that this section of the Criminal Procedure Code has no bearing in actions prosecuted without indictment.   (See also People v. Young, April, 1911, ROSALSKY, J., General Sessions Court.)

The admission of proof of another crime unrelated to the instant case, as stated in People v. Molineux (168 N. Y. 264), is reversible error.   (See also People v. De Garmo, 179 N. Y. 130.)

The alleged indecent exposure by defendant, committed in the presence of complainant's mother hours before the acts here

complained of happened, and which defendant denies, was improperly received. This testimony is no part of the *res gestae;* and if it is developed as a specific wrong by the defendant to show his bad character, such evidence is inadmissible. (People v. Richardson, 222 N. Y. 103.) It is error that is prejudicial and harmful. We cannot disregard it (see section 542, Code Criminal Procedure); and it calls for a reversal and new trial.

I vote, therefore, to reverse this conviction on the facts, and to grant the defendant a new trial.

EDWARDS, J.:

The judgment appealed from should be reversed on the facts, because on the trial incompetent evidence, which may have affected the decision, was received, tending to show that the defendant had committed an offense distinct from that charged against him by the information.

The charge was disorderly conduct by the defendant towards the complainant when the latter entered the defendant's apartment. In support of this charge the complainant's mother, under direction of the court, testified in full detail to an occurrence happening some hours before in the absence of the complainant, when she declared that the defendant had been guilty of indecent and outrageously insulting behavior to her. This testimony was considered competent by the trial court and must therefore have been forceful towards conclusion of defendant's guilt, and probably decisive in view of the sharply conflicting testimony relating directly to the matters set out in the information. Hence, if this testimony of the mother was incompetent, the defendant did not have a fair trial, although— probably from ignorance of the rule of practice—being unaided by counsel, he made no objection and took no exception. The record in the absence of an exception presents no error of law; but this court may and should reverse and order a new

trial if justice requires a re-examination of the facts. (Code Crim. Proc., § 7.64; People v. Huson, 187 N. Y. 97; People v. Cascia, 191 App. Div. 376, 381.)

I think the testimony above adverted to was incompetent. Under the system of rules of evidence here established, adherence to the issue within definite confining limits is required strictly; the defendant's character is not in issue in a criminal case unless he so elects; and evidence to convict him of one crime cannot be furnished by showing him to be guilty of another. The apparent exceptions to the last rule stated are cases in which the other crimes are shown incidentally as part of legitimate circumstantial evidence on the main issue. Here the evidence upon which the prosecution was based was integral from the moment of complainant's entrance into the defendant's apartment to the conclusion of the occurrence then resulting; previous quarrels of the defendant with the rest of the world, including other members of the complainant's family, were extraneous, and should have been excluded. (People v. De Garmo, 179 N. Y. 130; People v. Molineux, 168 N. Y. 264.)

I therefore advise that the judgment be reversed, with an order for a new trial in the Magistrates' Court.