### UNITED STATES v. SAGER et al.
#### No. 344.

Circuit Court of Appeals, Second Circuit.
May 11, 1931.

Hornblower, Miller, Miller & Boston, of New York City (Harold H. Corbin, Edward J. Bennett, and George Wolf, all of New York City, of counsel), for appellant Sager.

Gilbert & Brandeis and George H. Combs, Jr., both of New York City (John W. Davis, David L. Podell, and Susan Brandeis, all of New York City, of counsel), for appellant Shalleck.

William E. Riseley, of New York City, for appellant Reynolds.

George Z. Medalie, U. S. Atty., of New York City (Leon Leighton and Seymour D. Altmark, both of New York City, of counsel), for the United States.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

The indictments here contain eight counts. The appellants were convicted as follows: Sager with bribing a juror while in service in the trial of a criminal case which he was defending, in violation of U. S. C. title 18, § 237 (18 USCA § 237), Criminal Code § 131; the appellants, Shalleck and Reynolds and Sager, of conspiring to offer and give a bribe to a juror in violation of U. S. Code, title 18, § 88 (18 USCA § 88), Criminal Code § 37; Sager of conspiring to defraud the United States of the impartial services of a court bailiff in violation of title 18, U. S. C. § 88 (18 USCA § 88). They were acquitted on all other counts.

The appellants were attorneys for the defendants in a criminal prosecution in the United States District Court for the Southern District of New York, and one John Cruz was a juror in the trial of that case. While the trial was proceeding, Cruz became ill on January 23, 1930. He was examined by a physician and ordered to be taken home in a taxicab, and was placed in charge of bailiff Wechsler. Sager telephoned his office to obtain a motorcar belonging to his client on trial to take Cruz home. The car was unavailable, and he thereupon gave Wechsler $5 to take "that poor devil home, and see that he gets a plate of hot soup as the doctor has ordered." Sager gave about $35 to this bailiff from time to time and about $30 more to others, moneys which he received from his client for expenses. On February 18, 1930, the jury returned from its deliberation to the courtroom to have evidence read. Cruz had asked in the jury room "for the last four pages of Hanson's testimony." While the stenographer was looking for these pages, appellant Shalleck, who had made a digest of the testimony page by page, said, "This will help you find the spot, the last page is 1492." "Turn to 1492 and go back four pages." The stenographer read pages 1435 to 1439 of Hanson's testimony but not the end of the entire testimony. After further deliberation, eleven voted for conviction, Cruz holding out for acquittal. But the jury returned and voted the defendants on trial guilty, and Sa-

ger asked to poll the jury. While this was being done, Cruz, when reached, said he had doubt as to the testimony. The court directed the jury to further consider the case, and, after further deliberation, the jury disagreed. The appellee offered proof establishing that, when Sager told the bailiff to take Cruz home and to get him a plate of hot soup, he said, "See what you can do for him; tell him somebody will be up to see him." Wechsler said Sager gave him $10 or $15, and he put the money in Cruz' coat. While Cruz and Wechsler were riding to the former's home, he described his poor home conditions and poverty. He also described himself and his family as "in a very bad situation." Wechsler then told Cruz that, if he would vote not guilty for the defendants, "they are nice people, they will help you out, they will get you a job and everything." Cruz said, "All right," and Wechsler then told him that "somebody would be up to see him and talk to him about the case." The next morning Wechsler spoke to Sager while in the corridor of the courthouse and reported to him what transpired with the promises he (Wechsler) made, and Sager stated he would carry them out. Wechsler said that that afternoon he walked over to Shalleck in the courtroom and told him Cruz had not found the $10 which he (Wechsler) had put in his pocket, whereupon Shelleck gave Wechsler a $10 bill, and said, "Give him this," and Wechsler went over and handed it to Cruz. Wechsler reported this to Sager. Three days later Cruz told Wechsler they had not been up to see him, and he would like to see them because he needed some money. Shortly afterward Wechsler met Reynolds in the lavatory in the courthouse and told him, "Cruz would like to have them come up to see him." Reynolds replied, "You tell Cruz we will see him later on." Later in his examination, Wechsler said Reynolds' words were, "You tell him we will see him after the case is over." Cruz was visited by one Conway on three different evenings. Each time he was given money, $50, $50, and $200, which he accepted, and was told to stick to "not guilty" and he was told: "Never give up. Another thing, if you have any doubt, and you think they are going to beat you, the other jurors, you ask the foreman to ask for the last four pages of Mr. Hanson's testimony." Conway was a bondsman and was known to Sager and Reynolds. Conway was not available for subpœna at the trial and not produced by the appellants. The appellee introduced testimony as to its effort to find him.

■ The first count charges the appellants "did offer, give and cause to be offered and given, from time to time, during the said trial, various sums of money in currency of the United States aggregating over three hundred dollars, to and for the benefit of the said John Cruz * * * and did from time to time during the said trial, offer, give and cause to be offered and given to the said John Cruz, promises of money, value and reward, with intent to influence the action, vote, opinion and decision of the said John Cruz, as a juror, * * *" and that the defendants were "well aware that the said John Cruz was serving as a juror therein and was authorized by the Law of the United States, to hear and determine, as such juror, the issues of fact in the said action," and it alleges that this was a violation of section 131 U. S. Criminal Code (18 USCA § 237). This states an offense under section 135 U. S. Criminal Code (18 U. S. C. § 241 [18 USCA § 241]), which forbids any attempt to influence jurors; it does not state an offense under section 131, which concerns bribing a judicial officer. The latter section forbids the offering or giving of money, value, or promise or agreement to any judge, judicial officer, or other person authorized to hear or determine any question, with intent to influence his act, opinion, or decision. Section 131 is entitled "bribery of judicial officer." A juror is not within this section. Section 135 is entitled "Attempting to influence * * * juror, or officer." Both sections became effective March 4, 1909. Congress did not intend to enact both statutes at the same time for the same offense or purpose. While a juror becomes a servant of the United States while in its service, he is not a judicial officer. The penalties to be imposed on guilty defendants under these statutes are different. Section 131 carries the penalty of $20,000 fine and 15 years' imprisonment; section 135, $1,000 fine and one year imprisonment. Sager received a sentence of two years on this count.

While the charge contained in the count is sufficient to charge a violation of section 135, a retrial may not be had of the charge of bribing a juror. Count 3, setting forth such a charge, was dismissed at the end of all the proof on appellants' motion. It would now constitute a double jeopardy and be contrary to law to retry the appellant on this count. The issue submitted to the jury by the court below was given under instructions as to a violation of section 131 as the applicable statute, and, since that instruction was erroneous

and the statute not applicable, a reversal of this count is necessary. The count will be dismissed.

The second count charges:

■ "And the Grand Jurors aforesaid on their oath aforesaid; do hereby reaffirm, reallege and incorporate, as if herein set forth in full, all the allegations in paragraph I of the first Count of this Indictment, and do further upon their oath present:

"That heretofore and at and after the commencement of the said trial, and before the court charged the jury therein, the defendants herein, to wit, Arthur N. Sager, Joseph Shalleck and Edward Reynolds, being then and there attorneys and counsel for the said Charles Beadon and certain other defendants in the said trial, did in the Southern District of New York, conspire with each other and with the said John Cruz, and the said Murray Wechsler, and with divers other persons to the Grand Jurors unknown, to commit an offense against the United States, to wit, to offer and give, and cause to be offered and given, from time to time during the said trial, various sums of money, and promises of money, value and reward, to and for the benefit of the said John Cruz, with intent to influence the action, vote, opinion and decision of the said John Cruz, as a juror in the said trial of the said action, and with intent to cause him to determine therein unfavorably to the United States questions and matters which would come before him for determination as such juror, said defendants, Arthur N. Sager, Joseph Shalleck and Edward Reynolds being at the times of such conspiracy and throughout the said trial, well aware that the said John Cruz was serving as a juror therein, and was authorized by the Law of the United States, to hear and determine as such juror, the issues of fact in said action."

"After the formation of such conspiracy and in order to effect the object thereof, the following overt acts were done."

■ This count alleges concert between several intended givers of a bribe and the intended taker of the same bribe. This concert of givers and plurality of agents are necessary elements in the substantive offense of agreeing to receive a bribe and of agreeing to give one. Where concert is necessary to an offense, conspiracy does not lie. There may not be a conspiracy founded on a crime to commit bribery between persons, one charged with the intended taking and several charged with giving the same bribe. Concert is always necessary to an agreement to take and to give a bribe; it is always necessary to an

intended taking and an intended giving; and it is necessary to the receipt of a bribe and the giving of a bribe. United States v. Dietrich, 126 F. 664, 667 (C. C. Dist. Neb.); United States v. N. Y. Central R. R., 146 F. 298 (C. C. S. D. N. Y.). In the Dietrich Case, Judge Van Devanter said: "Concert and plurality of agents in such an agreement or transaction are, in a sense, indispensable elements of the substantive offenses, defined in section 1781, of agreeing to receive a bribe and of agreeing to give one. A person cannot agree with himself, receive from himself, or give to himself. The concurrent and several acts of two persons are necessary to the act of agreeing, receiving, or giving. In this respect, agreeing to receive a bribe from another and agreeing to give one are unlike soliciting or offering a bribe, because the solicitation or offer may be the act of a single person and may occur without any concurrent act of another. The rule stated by Wharton (2 Cr. L. § 1339) is applicable here."

In United States v. Katz, 271 U. S. 354, 46 S. Ct. 513, 70 L. Ed. 986, Justice Stone declares that "an indictment of the buyer and seller for a conspiracy to make the sale [liquor] would have been of doubtful validity." The District Court said, in United States v. Burke, 221 F. 1014, 1015 (S. D. N. Y.): "It is well recognized that, in a crime such as bribery, where the participation of at least two persons is necessary and concert of action is essential to the offense, an indictment will not lie charging a conspiracy to commit such offense."

Count 2 charges that the appellants and Cruz all conspired to bribe Cruz. An indictment charging that two persons conspired with a third person names that third person just as fully and with the same effect as the first two persons. A. Guckenheimer & Bros. Co. v. United States, 3 F.(2d) 786 (C. C. A. 3). We have recognized the rule of limitation upon a conspiracy count as applying "to the giver and taker of a bribe (both being guilty by statute)." Vannata v. United States (C. C. A.) 289 F. 424, 427. In so doing, we referred with approval to United States v. Dietrich and United States v. N. Y. C. R. R., supra. But it is argued that in the Dietrich Case he agreed with Fisher to take a bribe and that Fisher agreed with Dietrich to give a bribe. But, where three or more are charged in this indictment with conspiring together to bribe Cruz, the word "agreed" is redundant, for conspiracy imports an agreement, and "bribery," in which the giver and taker participate, imports agreement. As

said in the Dietrich Case, "a person cannot agree with himself, receive from himself, or give to himself," and "the concurrent and several acts of two persons are necessary to the act of agreeing, receiving, or giving." Cruz could not join in the conspiracy to offer and give himself a bribe unless he agreed to take and accept one. Chadwick v. United States, 141 F. 225 (C. C. A. 6). Indeed, the overt acts 3, 5, and 6 actually charged Cruz' receipt of the bribe money.

It is said that, if the crime as charged can be accomplished without the consent on the part of all the conspirators or without concerted action on the part of all the conspirators, then a charge of conspiracy will lie. United States v. Holte, 236 U. S. 140, 35 S. Ct. 271, 59 L. Ed. 504, L. R. A. 1915D, 281. In the Holte Case the offense, a violation of the Mann Act (18 USCA §§ 397–404) might have occurred without the woman's consent. So, in the Chadwick Case, the check could be wrongfully certified without the guilty complicity of the drawer. But here the conspiracy, as charged, is one between the givers and taker of the bribe to offer and give a bribe to the taker, which cannot exist without the consent and guilty complicity of the taker. The concerted action with Cruz is the very essence of the crime.

The case of In re Coy, 127 U. S. 731, 8 S. Ct. 1263, 32 L. Ed. 274, which appellee refers to, arose on habeas corpus after sentence with no attack on the indictment. It it not applicable. In Haas v. Henkel, 216 U. S. 462, 30 S. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112, two cotton speculators were, in the first indictment, charged with conspiracy to bribe a government official. In the second indictment, two were charged with a third party to bribe a government official. In the third indictment, which was for conspiracy to defraud the United States, and not for conspiracy to bribe, the government official was joined as a defendant with the speculators. This followed the rule of the Dietrich Case. Browne v. United States, 290 F. 870 (C. C. A. 6), sets forth in the opinion that the prime object of the conspiracy was to bribe one who was not participating in the conspiracy but acting for the government to entrap the defendants. The government agent was not a party to the conspiracy. It is not inconsistent with the rule that we apply. Harvey v. United States, 23 F.(2d) 561 (C. C. A. 2) and Felder v. United States, 9 F.(2d) 872 (C. C. A. 2), are not in point.

The court on motion for a new trial considered the sufficiency of this count of the in-

dictment. The appellee does not now base its support, claiming the validity of the count, upon the reasons set forth in the opinion filed in denying appellants' motion. The denial of the motion was based upon the assumption that the rule of the Dietrich Case does not apply because Cruz was not made a defendant and convicted. But the conspiracy cannot be established out of what is not a crime by merely not indicting as a defendant one or more of the parties named as participants in the indictment. A plurality of parties givers does not change the rule of the Dietrich Case. United States v. N. Y. Central R. R., supra.

It does not change the substantive offense of bribery that there be several givers and a single taker. But it was thought below that appellants were indicted for having conspired by unlawful agreement to corrupt Cruz prior to the successive payments that were made to him. The indictment charges only one agreement, and Cruz was a party to the agreement "from the commencement of the Utah Lead trial." This claim is foreign to the indictment. Cruz was a party to the only agreement alleged. There is no disconnected or antecedent conspiracy alleged. The language is that the appellants conspired in association "with the said John Cruz"—quite the opposite of the charge of any separate action on the part of the appellants alone. Guckenheimer v. United States, supra. And the phrase of the charge is, "After the formation of such conspiracy and in order to effect the object thereof, the following overt acts were done." This court said, "An indictment will not lie against such actors for conspiring to commit the offense they actually did commit." Vannata v. United States, supra, at page 427 of 289 F.

The failure of this count to charge a crime is not answered by stating that it is "inartistically drawn," and it "should not be scrutinized with a critical eye," or that "it amounts to an imperfection in the matter of form only." The difficulty is that the count of the indictment does not charge a crime. It is no mere formal defect. Dunbar v. United States, 156 U. S. 185, 15 S. Ct. 325, 39 L. Ed. 390. Goulson v. United States (C. C. A.) 16 F.(2d) 44. The judgment of conviction of the three appellants on this count must be reversed.

There remains appellant Sager's conviction on the sixth count. In view of the errors committed in the admission of evidence which were prejudicial to this appellant, there must be a new trial on this count. The appel-

lant voluntarily appeared and testified before the grand jury. As part of the appellee's direct case, the United States attorney offered in evidence the stenographer's minutes of the grand jury proceedings. Sufficient and timely objection was made to the admission of this record. Among other matters, the following subjects were read from the grand jury minutes to the jury: Inquiries as to the bringing of the Utah Lead Case to Sager by one Eugene McGee and as to his having been instrumental in bringing other cases to Sager; McGee's connection with and interest in the case; remarks upon the disbarment of McGee and inquiries as to why he was disbarred; the affirmance of McGee's disbarment and statements by the United States attorney that he did not think he was innocent of the charge upon which he was disbarred; inquiries as to the giving of money and obtaining information from bailiffs in the Poultry Case, tried in the fall of 1929, with Sager as attorney for the defendants; statements by the prosecutor that bailiffs leaked both ways and would leak a little more readily if given some money; inquiries concerning gratuities given to bondsmen in prior cases; statement by the prosecutor that he always found bailiffs extremely courteous without being paid; suggestions by the United States attorney that nothing was more common than for counsel to excuse a prospective juror simply on his looks; inquiries concerning a possible investigation of the Utah Lead jury because of the fact that the foreman was alleged to be in an illegitimate business, running a speakeasy; statements by the assistant United States attorney as to the nature of Shalleck's summation; suggestions that the defendants in the Utah Lead Case had been very busy looking up the jurors' history; discussion of Shalleck's summation in the Utah Lead Case; inquiries as to whether the prosecutor's office brought any pressure to bear on the Utah Lead jurors; inquiries about the business relation between McGee and Conway; inquiry as to whether any part of Sager's fee was paid to McGee.

Admissions made by Sager as to the crime for which he was on trial or matters relating to that specific offense were material and competent. But these indiscriminate references to previous trials, bailiffs, and bondsmen, the giving of money at prior trials, association with a disbarred lawyer, and inquiries as to whether he was justly disbarred, were all collateral matters and improperly received, and we think prejudicial to the appellant's case. Boyd v. United States, 142 U. S. 450;

12 S. Ct. 292, 295, 35 L. Ed. 1077; Commonwealth v. Campbell, 155 Mass. 537, 30 N. E. 72; State v. Berger, 121 Iowa, 581, 96 N. W. 1094; State v. Ellwood, 17 R. I. 763, 24 A. 782. As said in the Boyd Case, no notice was given in the indictment "of the purpose of the government to introduce proof of them" (collateral issues). When the grand jury's minutes were offered and received, Sager's credibility was not in issue, and the introduction of these irrelevant portions of the testimony forced him into a position where he was compelled to explain collateral matters with which he was not charged. It reflected to his discredit, and was used by the prosecutor to his disadvantage in his summation. He was prejudiced before the jury, and such error constituted failure to accord him an impartial trial.

▆▆▆ Appellant Sager, as a witness in his own behalf, testified as to his career and professional employment. He said on direct examination that he served as an Assistant Attorney General. He was asked on cross-examination if he left that position at the suggestion of the Attorney General because of various complaints. He said positively that the Attorney General had not suggested his resignation. The subject of whether Sager had been asked to resign or did so voluntarily was one which should not have been gone into at all, inasmuch as it did not tend to disclose any vicious or criminal acts of his life. People v. Johnston, 228 N. Y. 332, 127 N. E. 186. But it having gone into the subject, and obtaining a denial from the appellant, those answers were binding on the appellee and not subject to attack by way of contradiction by other witnesses. This collateral issue was introduced on cross-examination. The rule that any witness may be asked concerning any vicious or criminal act of his past life is limited. The witness may be asked about any specific incident, but his answers thereto are final and conclusive except only where a judgment of conviction of crime has been shown. At the end of the trial, a sharp issue was presented as to credibility between Sager and Wechsler concerning their conversations and instructions to Cruz and the employment of Wechsler as a bribe giver. The issue was sharply drawn, and there was thrown in the balance against the defendant the testimony of the Attorney General of the United States and his assistant, offered by the government in rebuttal, in substance, that Sager was untruthful, was obliged to resign, and did so because he had been drinking, and that, if he had not resigned, he would have been removed. A strong appeal was made by the appearance of the Attorney General and his assistant, and their contradiction of Sager's testimony raised an issue of credibility which should not have been presented. Moreover, the United States attorney drew in summation a strong contrast between the men to Sager's disadvantage, pointing to the appearance as a witness of the Attorney General. The learned judge, thinking that it bore upon Sager's credibility, called the jury's attention to this collateral issue. Greenleaf stated the rule which has been long recognized, as follows: "It has long been settled that testimony from other witnesses of particular instances of misconduct is an improper mode of discrediting, because of the confusion of issues and waste of time that would thus be involved, and because of the unfair surprise to the witness, who cannot know what variety of false charges may be specified and cannot be prepared to expose their falsity. This rule excluding proof by other witnesses is well settled and everywhere accepted."

In Bullard v. United States, 245 F. 837 (C. C. A. 4), and Rau v. United States, 260 F. 131 (C. C. A. 2), this rule was recognized and applied and the judgments of conviction were reversed for the admission of similar collateral issues. Hanover Fire Ins. Co. v. Dallavo, 274 F. 258 (C. C. A. 6); People v. Hinksman, 192 N. Y. 421, 85 N. E. 676; People v. De Garmo, 179 N. Y. 130, 71 N. E. 736.

The judgment will be reversed, with directions to dismiss count 2 and discharge the appellants Shalleck and Reynolds; as to Sager, the judgment is reversed, and a new trial may be had on count 6. The errors to which we have referred require such reversal.

Judgments reversed.