### UNITED STATES v. GRAND TRUNK RY. CO. OF CANADA et al.

(District Court, W. D. New York. June 8, 1915.)

1. COMMERCE ⬥31—INTERSTATE COMMERCE—STATUTES.
    Imports from a foreign country to the United States are not included in Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379; but commerce of a domestic origin, transferred into or through a foreign country, falls within its provisions.
    [Ed. Note.—For other cases, see Commerce, Cent. Dig. § 24; Dec. Dig. ⬥31.]

2. CARRIERS ⬥30—INTERSTATE COMMERCE ACT—APPLICABILITY OF STATUTES.
    Though Interstate Commerce Act Feb. 4, 1887, c. 104, § 6, par. 2, 24 Stat. 380, as amended by Act June 29, 1906, c. 3591, § 2, 34 Stat. 586 (Comp. St. 1913, § 8569), does not specifically provide for the publication of passenger rates where the journey is through a foreign country to another point in the United States, yet in view of the entire provision for the publication of freight rates for shipments over such a route, the carrier must publish passenger rates.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 81; Dec. Dig. ⬥30.]

3. CARRIERS ⬥32—INTERSTATE COMMERCE—OFFENSES.
    Where a theatrical company, by promise of rebates, was induced to route its shows over a railroad line which ran between two points in the United States, though part of the route lay through the Dominion of Canada, the rebates being made from the aggregate fares for the entire journey, the agreement was in violation of Interstate Commerce Act, § 6.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 83–85; Dec. Dig. ⬥32.]

4. CONSPIRACY ⬥40—GIVING OF REBATES—AGREEMENT.
    Interstate Commerce Act, § 6, makes it unlawful for a railroad company to give or a shipper to receive rebates, but does not provide any punishment for receiving rebates. A railroad company and a shipper entered into a conspiracy for the giving of rebates. Held, that both could be prosecuted, under Rev. St. § 5440, making a conspiracy to violate the laws of the United States an offense.
    [Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 73, 75–78; Dec. Dig. ⬥40.]

5. CONSPIRACY ⬥45—PROSECUTION—EVIDENCE.
    In a prosecution for conspiring to violate the laws of the United States by giving and receiving rebates, alleged overt acts, which were in them-

selves lawful, being connected with the object of the conspiracy, may be shown in evidence.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 100–104; Dec. Dig. 45.]

Indictment by the United States against the Grand Trunk Railway Company of Canada, Frank P. Dwyer, and the Empire Circuit Company, to which defendants demurred. Demurrers overruled.

John Lord O'Brien, of Buffalo, N. Y., for the United States.

Moot, Sprague, Brownell & Marcy, of Buffalo, N. Y. (Adelbert Moot, of Buffalo, N. Y., of counsel), for defendants.

HAZEL, District Judge. The indictments against the defendants, Grand Trunk Railway Company of Canada, the Empire Circuit Company, and Frank P. Dwyer, contain two counts, each substantially alleging a conspiracy to violate section 6 of the act to regulate commerce, approved February 4, 1887, as amended; the first count alleging that in 1908 an agreement was made between the Grand Trunk Railway Company, a corporation of the Dominion of Canada operating a railway from Detroit to Buffalo, Buffalo to Toronto, Toronto to Montreal, and Montreal to Boston, and the defendant the Empire Circuit Company, for the exclusive right to transport shows owned by the stockholders of the latter in return for a rebate of $200 a month to be paid or remitted to the Empire Circuit Company out of the lawful fares for such transportation, the existence of such agreement to be concealed by a pretended contract for advertising. The second count alleges a similar conspiracy, entered into on May 1, 1910, except that the refund or rebate was to be at the rate of $300 per month, which was to be "ostensibly in return for the publication in theatrical programs of certain advertising matter which was greatly in excess of the true and actual worth" thereof. Overt acts are alleged, which, it is claimed, were committed with the intention of effectuating the conspiracy, and consisted, inter alia, of the transportation of the shows from Detroit to Buffalo, and from Buffalo to Toronto, Canada, at the rate of fare published and filed with the Interstate Commerce Commission.

The principal grounds of demurrer are: (a) That the indictment charges no crime, as the filing or publishing of tariffs relating to transportation of passengers from one point to another in the United States is not required where the destination is reached through a foreign country; (b) that the indictment is defective, in that it fails to charge that the rebates were to be paid out of fares for transportation solely within or from the United States; (c) and that, if a statute was violated, it was section 6 of the Interstate Commerce Act, conspiracy for the violation of which will not lie.

[1, 2] 1. Imports from a foreign country to the United States concededly are not included in the act to regulate commerce; but commerce of a domestic origin, although transported into or through a foreign country, is unquestionably included within its provisions. It makes no difference that section 6 (second paragraph) provides for the

publication of tariff rates on the transportation of freight, making no mention of passenger rates. To properly interpret such paragraph, the entire section must be read and considered in connection therewith, when it will clearly appear that the provision for publishing and posting rates is not limited to the shipment of merchandise, but by implication, if not in terms, includes passenger service. In the recent case of Hoke v. United States, 227 U. S. 308, 33 Sup. Ct. 281, 57 L. Ed. 523, 43 L. R. A. (N. S.) 906, Ann. Cas. 1913E, 905, the Supreme Court has emphatically held that commerce among the states consists in intercourse and traffic between their citizens, and includes the transportation of persons and property

[3] 2. Counsel for defendant contends that if any discriminatory rates were given, by means of advertising contracts, on journeys originating in the United States, but including trips and stops at points in Canada, or originating at points in Canada and terminating in the United States, this did not constitute a crime, and that the indictment must allege that the payment of rebates was on the American portions of the journey. The question thus presented is perhaps not wholly free from difficulty, but it must be considered in connection with the intention of Congress to make provision for the transportation of commerce, not only between states and territories, but to and from foreign countries, and broadly for "the whole field of commerce," excluding intrastate. Texas & P. R. R. Co. v. I. C. C., 162 U. S. 197, 16 Sup. Ct. 666, 40 L. Ed. 940. The indictment is not open to the inference that the transportation in question was for separate completed journeys in Canada. The offense consisted of a plan to divert passenger traffic to the lines of the defendant company which extended from points in the United States through Canada to other points in the United States. The question, however, of the payment of rebates or refunds on fares between points in Canada exclusively arises only as an incident of the entire transportation which originated in the United States, for the indictment, as I read it, substantially charges that the rebates were to be paid from the aggregate fares for the entire journey under an agreement devised to evade the statute. The route from Detroit to Boston was evidently regarded by the parties to the agreement as a theatrical circuit for shows of the Empire Circuit Company, and, although stops were made along the way for the giving of performances, the idea no doubt was that the journey was to be practically continuable. It would, of course, make a difference if the rebates were to be paid out of the rates or charges for traveling within the limits of Canada alone, or even from Montreal to Boston; but as the indictment alleges with particularity that the rebates were to be paid out of the total fares collected, it is sufficiently alleged, I think, that the rebating was on fares for transportation from Detroit to Buffalo, and thence to Toronto, in Canada, and not, as demurrants seem to think, out of fares covering journeys originating in Canada.

[4] 3. It may be safely held, I think, that the defendants can be prosecuted under section 5440 of the Revised Statutes for conspiring to commit an offense against the laws of the United States, regardless of the penalty. Thomas v. United States, 156 Fed. 897, 84 C. C. A.

477, 17 L. R. A. (N. S.) 720; Clune v. United States, 159 U. S. 590, 16 Sup. Ct. 125, 40 L. Ed. 269. See, also, Toledo, A. A. & N. M. v. Penn Co. (C. C.) 54 Fed. 730, 19 L. R. A. 387; Waterhouse v. Comer (C. C.) 55 Fed. 150, 19 L. R. A. 403. The case of the United States v. Dietrich (C. C.) 126 Fed. 664, upon which defendants place reliance, is not on a parity with the case at bar. There the indictment charged the giving and receiving of a bribe, and both parties were liable for a substantive offense, while in this case the indictment does not indicate the commission of a substantive offense by each defendant. The defendant Dwyer is charged simply with participating in the original agreement, and not with paying the unlawful rebates, the payment of which is a necessary ingredient of the substantive offense. Nor has the Empire Circuit Company committed an act for which an indictment against it alone would lie. It is true enough that as a participant in the asserted conspiracy the Empire Circuit Company has received or is to receive a rebate or refund from the lawful passenger rate under the guise of a payment for advertising, still as section 6 of the Interstate Commerce Act provides for punishing only the giver, and not the receiver, of a rebate on passenger fares, apparently a substantive offense has not been committed by it.

[5] There was also much discussion at the bar regarding the alleged overt acts which were in themselves lawful, and by reason of which the defendants urge the indictment for conspiracy must fall. It is true the overt acts, unconnected with the conspiracy, were of themselves innocent and commonplace; but this does not invalidate the indictment, since they were done pursuant to a conspiracy and to effect an unlawful purpose. Swift & Co. v. United States, 196 U. S. 375, 25 Sup. Ct. 276, 49 L. Ed. 518. If the conspiracy was conceived with wrongful intent, all acts done in furtherance thereof, or in its accomplishment, are essential elements of the offense. There are many adjudications in the federal courts in support of this doctrine. Hyde et al. v. United States, 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614. It is unnecessary to discuss the possible bearing on the case at bar of the decision of the Supreme Court in Nash v. United States, 229 U. S. 376, 33 Sup. Ct. 780, 57 L. Ed. 1232, holding that under the Sherman Anti-Trust Act an overt act is not essential to complete the charge of conspiracy, as the present indictment is under another provision of the Revised Statutes, namely, section 5440, and to insure its validity must contain a definite charge of conspiracy either to defraud the United States, or to commit an offense against the United States, and an averment of an overt act to constitute the offense.

I think the indictment sufficiently states the offense, and that defendants are fairly apprised of the charge they will be required to meet at the trial. The demurrers are overruled.