STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ROLAND H. LOOG, SIDNEY L. HENRY AND JAMES J. DIGNEY, PLAINTIFFS IN ERROR.

Submitted October term, 1934—Decided July 11, 1935.

Before Brogan, Chief Justice, and Justices Parker and Bodine.

For the prosecutor, *Jonas Tumen*, prosecutor of the pleas, Monmouth county (*J. Victor Carton*, assistant prosecutor, on the brief).

For the defendants, *Lester C. Leonard*.

Per Curiam.

This writ of error brings up for review the conviction of Roland H. Loog, Sidney L. Henry and James J. Digney, who were tried in the Monmouth County Court of Quarter Sessions upon an indictment for conspiracy to defame one Max Silverstein, a medical doctor in Asbury Park, New Jersey, who, at the time of these occurrences, was a councilman in that municipality. Henry and Digney were also members of the governing body and Loog was the municipal clerk.

The indictment charged these defendants with having conspired to deprive Silverstein of his good name and character and to subject him, without just cause, to public infamy and disgrace and to injure him in the practice of his profession and in his standing as a member of the governing body of Asbury Park, New Jersey, and to connect him with the charge of the unlawful sale of narcotics in this, that they did falsely accuse Leonard Johnson, his chauffeur, before the police magistrate of Asbury Park with the unlawful sale of heroin, which complaint was untrue and made for the unlaw-

ful purpose of connecting Dr. Silverstein with the crime of the unlawful sale of narcotics, and in furtherance of said conspiracy caused the Asbury Park Press, a newspaper of the city of Asbury Park, to publish an extra edition of the newspaper, which edition contained statements and innuendos in relation to the sale of said narcotics, which statements and innuendos were against the good name of the said Silverstein and which unlawful conspiracy was false and made for the purpose of exposing Dr. Silverstein to public infamy, &c.

There was another charge in the indictment that these same defendants caused a citizen of Monmouth county to swear to a false affidavit, implicating Dr. Silverstein with the said Johnson in the sale of narcotics.

At the end of the case, on motion of defense counsel, this charge was struck from the indictment.

There was a fourth defendant in the case, Wayne McMurray, an employe of the Asbury Park Press, and who, on motion of defense counsel, had a verdict of not guilty directed by the court in his favor.

One of the main arguments of the plaintiffs in error for a reversal of their conviction is that the verdict of the jury was contrary to the weight of the evidence. Now the testimony offered for the consideration of the jury tended to show the following facts, viz., that in February, 1934, the defendants, for the purpose of defaming and otherwise injuring Dr. Silverstein, planned to apprehend Johnson, his chauffeur, allegedly for the sale of narcotics. The defendants met in a cafe and, as a result of the meeting and plan, one Jones was promised money if he would obtain morphine from Johnson. Nothing materialized from this plan. The parties defendant then made use of the services of one Fleming, a special officer, to make the purchase. Max H. Roder, a narcotics agent in the service of the United States government, had been called into the case. He, together with the said Fleming and one Burke, who was acting captain of detectives in Asbury Park, drove to the vicinity of Dr. Silverstein's house. Fleming went in and purchased from Johnson a bottle containing a white powder, which was turned over to Roder. Several efforts were made to have the powder tested for narcotic

reaction and these resulted negatively. A further test was made at a local drug store where it was thought that a slight discoloration indicated the presence of heroin in the powder. From Roder's testimony, it would appear that at the time complaint was made against Johnson before the police magistrate in Asbury Park, he (Roder) believed there was heroin in the powder. Johnson was arrested and held for the action of the grand jury but no bill was found against him.

The testimony of the cafe keeper, if believed, would indicate that he had participated in the preliminary plan which ended with the arrest of Johnson, his excuse being that he had to acquiesce in the plan of the defendants (who, it will be remembered, were members of the governing body of Asbury Park) because he was anxious to obtain a liquor license for the upper part of his building and that on numerous occasions the defendants, or one of them, in his presence and in the presence of others, clearly indicated that the conspiracy had for its object the defamation and disgrace of Dr. Silverstein which they hoped to accomplish by the arrest and prosecution of his chauffeur on the charge of dealing in narcotics.

Another witness, Mrs. Saunders, testified that two of the defendants, Loog and Digney, planned, in her house, to get a quantity of the drug from Johnson, giving her a marked $10 bill for that purpose. The delivery of the drug was to be made to the defendants, as they planned, after its purchase, through an emissary of Johnson, one Nat Jones. The defendants agreed, in her presence, that neither Jones nor Johnson would get into trouble with the authorities but that the man they were after, in order to drive him out of public life, was Silverstein. This testimony was corroborated by the husband of Mrs. Saunders. The witness, Fleming, testified that Loog said, "well, Dr. Silverstein won't be so pleased when he reads the headlines in the paper." The testimony of the detectives, Burke and Sullivan, would indicate that they were honest in their purpose concerning the arrest of Johnson but that becoming suspicious of the affair, they managed to have the federal agent, Roder, called into the case.

There is a plenitude of testimony concerning meetings of

these defendants on the occasions referred to and later at the house of the defendant Henry, which, if the jury believed it, fully justified them in concluding that the sole purpose of the defendants, in the pursuit of Johnson, was to drive Silverstein out of public life, first, by the charging of the chauffeur with dealing in prohibited drugs, second, by the publication of the news article with its details which, coupled with the fact that Silverstein was a physician, would accomplish the downfall of the doctor in the minds of the people of the community.

On the part of the plaintiffs in error, it is said that they were acting in good faith, their object being to stamp out the selling of narcotics. This, however, presented a fact issue for the jury and the jury determined it against the defendants by their verdict of guilty.

From a review of the evidence, we are of the opinion that the verdict was not against the weight of the credible testimony.

The next ground for reversal is that it was error for the court to have denied the motion of the defendants for direction of acquittal at the end of the state's case and at the close of the entire case.

Plaintiffs in error argue that the proofs in the case do not make out the crime of conspiracy within section 37 of the Crimes act (2 *Comp. Stat.*, p. 1757), upon which the indictment is founded, and that this section (37) is exclusive and that unless the indictment is within the four corners of that section it cannot stand. We cannot adopt this view of the law but are of the opinion that if the acts charged amount to a conspiracy at common law that constitutes an offense against the criminal law of New Jersey, even though the acts charged in the indictment are not comprehended in so many words by the statute.

The argument is made that an indictment charging a conspiracy to injure Dr. Silverstein, by causing a false complaint to be made against his chauffeur cannot stand; and that the charge against Johnson would have no real effect upon Silverstein because it is too remote. In considering these points, we are hampered by the fact that in the record before us we

do not find a copy of the complaint made against Johnson. But aside from this, the indictment charges as a further overt act, viz., that the defendants caused the Asbury Park Press to publish an extra edition, after hours, wherein were contained statements and innuendos in relation to the sale of narcotics, which statements and innuendos connected Dr. Silverstein in the matter. On the front page of this extra edition was a headline across the entire top of the page, "Silverstein's driver held on dope charge," and below it, "Johnson accused of selling dope in Doctor's office." It may well be that this language was not a criminal libel but, under the circumstances, the question is: Did the defendants cause this publication to be made with the evil intention that people reading it would understand it as indicating that Dr. Silverstein was a party to the sale of narcotics? The proofs amply support a conclusion that they did and the jury evidently believed that the defendants did in fact perpetrate or cause to be perpetrated one or both of these overt acts.

At common law a conspiracy may be a plan to commit a crime but it may also be an evilly designed scheme or confederacy to cause a civil injury. That the statute, section 37 of the Crimes act, does not pre-empt common law conspiracy seems settled. It contains no negative or exclusive words and does not abolish that common law offense nor does the statute mean that the acts enumerated in the statute (section 37) shall alone constitute the offense of conspiracy. *State* v. *Norton,* 23 *N. J. L.* 33. In that case (at *p.* 44), we find this pertinent paragraph, "A combination is a conspiracy in law whenever the act to be done has a necessary tendency to prejudice the public or oppress individuals by unjustly subjecting them to the power of the confederates, and giving effect to the purposes of the latter, whether of extortion or mischief. *Whart. Cr. L.* 487." There it was held that the acts in question constituted criminal conspiracy at common law, "even though the act conspired to be done or the means by which it was to be accomplished be not in themselves criminal * * *."

It is most difficult to comprehensively define the offense of conspiracy. Chief Justice Beasley, in the case of *State* v.

*Donaldson,* 32 *N. J. L.* 151 (at *p.* 154), among other things, says, "it may be safely said nevertheless that a combination will be an indictable conspiracy whenever the end proposed or the means to be employed are of an highly criminal character; or where they are such as indicate great malice in the confederacy or where deceit is to be used, the object in view being unlawful; or where the confederacy, having no lawful aim, tends simply to the oppressing of individuals."

A consideration of the proof in this case discloses these qualities, and we think the indictment was sufficient and that the court properly rejected the motions for a direction of acquittal at the end of the state's case and at the end of the entire case.

It is next argued that the court fell into reversible error in the charge given to the jury and it is stated that the jury was, in substance, instructed "that the guilt or innocence of Johnson should determine the guilt or innocence of the defendants as to the alleged act concerning the charge against Johnson."

Our first observation is that there is no basis whatever for this argument. The court, nowhere in its charge, made the guilt or innocence of Johnson, in the matter of selling narcotics, the determining factor in the guilt or innocence of the defendants. The indictment was for conspiracy to defame Silverstein. One of the overt acts cited was the false prosecution of Johnson; the other was causing the story to be published in the Asbury Park Press and, by insinuation, connecting Dr. Silverstein with it. If the indictment had been for conspiracy to defame Johnson, the presence or absence of reasonable ground for his prosecution, in the matter of selling narcotics, would be very material but the situation here is quite different and, as has been said, the prosecution of Johnson is, in the indictment, merely designated as an overt act in furtherance of the conspiracy to defame Dr. Silverstein.

It is further argued that the "certain things" which the indictment alleged defendants agreed to do were not prohibited by section 37 of the Crimes act. This contention has already been disposed of. The proofs are comprehensive

enough to sustain an indictment for common law conspiracy and the thirty-seventh section of the Crimes act is not exclusive as to the crime of conspiracy in this state.

There is no merit to the other points advanced for a reversal, and the conviction is therefore affirmed.