STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ROBERT E. DUDLEY AND GEORGE LLOYD, PLAINTIFFS IN ERROR.

Submitted May 6, 1941—Decided July 16, 1941.

Before Brogan, Chief Justice, and Justices Case and Heher.

For the defendant in error, *William A. Wachenfeld* and *Joseph E. Conlon.*

For the plaintiffs in error, *Harold Simandl.*

For George Lloyd, *Harold Simandl.*

For Robert E. Dudley, *James A. Palmieri.*

The opinion of the court was delivered by

Case, J.  The writ of error brings up a judgment of conviction, following a jury verdict, of Robert E. Dudley and George Lloyd on an indictment charging that they "were the holders of a sum of money, betted, staked and wagered upon the results of a running race  *  *  *  thereafter to be run  *  *  *." The indictment was found under *R. S.* 2:135-7 which provides that "Any person who shall be a stakeholder of any sum of money or other thing which is bet, staked or wagered upon any running, pacing or trotting race of horses, mares or geldings,  *  *  *  shall be guilty of a misdemeanor." Reduced to the terms of the proofs, the question tried was whether the defendants were stakeholders with respect to a check for $233 delivered by Thomas A. Davis, Jr., to Robert E. Dudley on April 9th, 1940.  The check reads as follows:

"R. E. Dudley principal
                        Caldwell, N. J., April 9th, 1940.
              The Caldwell National Bank
Pay to the order of Geo. Lloyd                    $233.00
Two hundred thirty-three 00/100                   Dollars
              Thomas A. Davis, Jr.,
                     sp. Acct."

The words "R. E. Dudley principal" mean nothing.  They were a cover to conceal the gambling nature of the transaction from the bank authorities.  The check was in payment of net losses on racing bets made and determined before the delivery of the check.  The trial was narrowed to that single incident; nevertheless the incident was one of many such which had occurred between Davis, Dudley and Lloyd over a period of years.  The bets were made between Davis and Lloyd.  They

were made against the outcome of various horse races and were placed by Davis either through Dudley as a channel or directly by telephone with Lloyd; and after the races had been run and the winnings charged against the losses Dudley would go to Davis with a statement of the figures and collect the net difference due to Lloyd. If there ever was a clear balance remaining in Davis' favor it does not appear in the proofs. The gaming debts were paid by Davis to Dudley either in cash or by check to Dudley's order or by check to Lloyd's order, depending upon circumstances which have no bearing. That was the manner in which the transactions were conducted both generally and in this specific incident, the present payment being made, as stated above, by check to Lloyd's order delivered to Dudley.

At the close of the trial defendants moved for, and the court denied, a directed verdict. The first point argued on the appeal is that there was error in that ruling.

It is obvious that the proofs did not support the charge in point of time. The indictment charged that the defendants held "money  *  *  *  wagered upon the results of a running race  *  *  *  thereafter to be run  *  *  *." The check was given in settlement of losses already incurred. But the failure in proofs goes further than an immaterial discrepancy between the time alleged and the time proved. The function of a stakeholder, as commonly conceived, is to receive the sums wagered and hold them against the determining event, whether that event be a horse race or otherwise, and then pay them over to the winner; and the framer of the indictment apparently held that view. Bouvier's Law Dictionary defines "stakeholder" as "A third person chosen by two or more persons to keep in deposit property the right or possession of which is contested between them, and to be delivered to the one who shall establish his right to it. * * * A mere depositary for both parties of the money advanced by them respectively with a naked authority to deliver it over upon the proposed contingency." This definition, deduced from cited cases, is given in 27 *C. J.* 982 [§ 77] 6: "A stakeholder is a mere depositary of both parties to a wager for the money deposited by them, respectively, with a naked author-

ity to deliver it over on the proposed contingency; a person with whom money is deposited pending the decision of a bet or wager; one holding a fund which two or more claim adversely to each other; one who has received the funds of another or others in special deposit for a given purpose, to be paid to one party, or divided between both, or among all the parties, on the happening or not happening of some anticipated event."

That the function of the stakeholder in the statute under review is quite apart from that of the gamester is made plain by the original form in which the statute was passed, *Pamph. L.* 1846, *p.* 133, and by the transition of that statute through the years; as also by our cases, which are in harmony with the general thought that a stake, in this sense, is something of value which is in jeopardy or subject to a contingency and that a stakeholder is one selected by the gamesters to hold the substance wagered until the contingency is determined and then to pay over as previously agreed. See *Huncke* v. *Francis,* 27 *N. J. L.* 55; *Sutphin* v. *Crozer,* 30 *Id.* 257, reversed but without disturbing the question now under study, 32 *Id.* 462; *Shack* v. *Dickenhorst,* 99 *Id.* 120; *Sawin* v. *Eisele,* 99 *Id.* 117; *Van Pelt* v. *Schauble,* 68 *Id.* 638; *Hensler* v. *Jennings,* 62 *Id.* 209.

The 1846 statute provided:

"An act to prevent horse racing.

"2. And be it enacted, That if any person shall bet or wager upon the running, pacing, or trotting of any horses, mares, or geldings, or shall be concerned in making up any purse for any such running, pacing, or trotting, such person shall be deemed guilty of a misdemeanor, and on conviction shall be punished by fine not exceeding one hundred dollars, or imprisonment not exceeding six months, or both, at the discretion of the court.

"3. And be it enacted, That if any person shall be a stakeholder of any sum of money or other thing betted, staked, or wagered upon any such running, pacing, or trotting, or shall cause to be printed or set up any paper or other thing notifying or advertising any such running, pacing, or trotting, or shall be the rider of any horse, mare, or gelding in any race,

of either running, pacing, or trotting, such person shall be deemed guilty of a misdemeanor, and on conviction shall be punished by fine not exceeding one hundred dollars, or imprisonment not exceeding six months, or both, at the discretion of the court."

Thus, section 2 of the statute made it an indictable offense to lay a bet, and section 3 subjected the stakeholder who held the stakes to indictment. Later legislative changes removed from section 2 the provision for the indictment of the better, as held in *Haring* v. *State*, 51 *N. J. L.* 386:

"The second section of the act of 1846 was incorporated in the Crimes Act in the Revision, and is the fifty-sixth section of that act. *Rev. p.* 237. That section subjected to indictment a person who made a single bet upon a horse race. By force of a supplement passed March 11th, 1880, betting upon horse racing was not thereafter indictable. *Pamph. L.* 1880, *p.* 196, § 1. This act did not in anywise affect the first section of the act concerning gaming (*Rev., p.* 458), which makes wagers upon any race unlawful; it merely relieved from indictment the person who made a bet, but did not legalize such bet."

Lloyd's position in the transaction was never anything but that of one who made a bet. The indictment, clearly, in our opinion, did not go against that act. Therefore the motion for a direction should have been granted as to him.

The evidence against Dudley is slight. He had, three years before, introduced Davis to Lloyd with the statement that the latter was the bookmaker who did Dudley's business and for whom he was working and that Dudley would get added commissions if Davis would do business with Lloyd. The $233 check was endorsed first by the payee, Lloyd, and then by Dudley. It is a fair inference that Dudley had an interest in it; but whether or not there was a divided interest as between Dudley and Lloyd in the Davis check or the proceeds thereof has no part in the issue. The contingency of the wager had been resolved before the check was drawn or delivered; neither of the defendants was a stakeholder within the meaning of *R. S.* 2:135-7. Our conclusion is not affected *contra* by *R. S.* 2:57-2, formerly *Comp. Stat., p.* 2624, § 2,

construed in *Shack* v. *Dickenhorst*, 99 *N. J. L.* 120. Therefore a verdict should have been directed in favor of Dudley as well as in favor of Lloyd.

The indictment did not follow the words of the statute and is attacked on that ground. It charged that the defendants were the holders of a sum of money "betted, staked and wagered," &c. In view of our determination above, we need not pass on the sufficiency of the indictment further than to say that if it does not accuse the defendants of being "stakeholders" it does not charge a crime. That expression has a definite place in gambling transactions and is not to be varied in a criminal accusation by either circumlocution or a splitting of the essential word.

The remaining points presented on defendants' brief do not require further discussion.

The judgment below will be reversed.