This is an appeal from the conviction of defendant, John Lennon, by the verdict of a jury, after trial in the Bergen County Court, on an indictment charging a conspiracy to violate the gambling laws of this State.
Appellant urges two grounds for reversal:
1. The indictment fails to allege an offense under the laws of New Jersey.
2. The allegations of the indictment were not proven.
The indictment charged, inter alia, that P. James Pellecchia, the appellant John Lennon, alias Jack Lennon, Albert Klausner, John Doe and Richard Roe, on or about June 1, 1944, and continuously thereafter, until on or about the 1st day of May, 1948, did "dishonestly, fraudulently, corruptly, falsely, knowingly, and unlawfully combine, unite, confederate, conspire and agree together and with evil intent to violate the gambling statutes of the State of New Jersey, namely, Title 2, chapter 135 of the Revised Statutes of the State of New Jersey," by said Pellecchia telephoning bets on the running of horses to telephones located in the Borough of Cliffside Park, in Bergen County, New Jersey, maintained and operated for that purpose by the defendants, John Doe, Richard Roe, and the defendant John Lennon, alias Jack Lennon, and that an account of the bets and wagers made by the said Pellecchia was kept by the defendant Lennon, who paid over to Pellecchia amounts of money, in payment of the bets won by Pellecchia, and that defendant Lennon, either personally or by his agent, Albert Klausner, collected from Pellecchia sums of money in payment of such bets as were lost by Pellecchia, and where such payments were made by Pellecchia by checks, the defendant, Lennon, cashed or deposited same at the United National Bank of Cliffside Park, Cliffside Park, New Jersey. *Page 418 
The trial court, in his charge limited the charge to a violation of R.S. 2:135-3. R.S. 2:135-3, as amended by chapter 205 of the Laws of 1940, provides:
"Any person who shall habitually or otherwise, buy or sell what is commonly known as a pool, or any interest or share in any pool, or shall make or take what is commonly known as a book, upon the running, pacing or trotting, either within or without this State, of any horse, mare or gelding, or shall conduct the practices commonly known as bookmaking or pool selling, or shall keep a place to which persons may resort for engaging in any such practices, or for betting upon the event of any horse race, or other race or contest, either within or without this state, or for gambling in any form, or any person who shall aid, abet or assist in any such acts, shall be guilty of a misdemeanor, and punished by a fine of not less than one thousand dollars nor more than five thousand dollars, or by imprisonment in the State prison for not less than one year nor more than five years. Nothing in this section shall be construed to apply to pari-mutuel betting as authorized by the Constitution of this State and any statute passed in pursuance thereof."
Appellant argues that "bookmaking" necessarily requires the acceptance of money on a bet, for an event then undecided, and that, since the testimony disclosed that Lennon never received any money before the contingency of the wager was resolved, the overt acts, with which Lennon was charged, do not constitute the crime of bookmaking, within the purview of the quoted statute. In support of this position, appellant relies on State v. Dudley,127 N.J.L. 127 (Sup. Ct. 1941). In that case, the indictment charged the defendants with being "holders of a sum of money, betted, staked or wagered upon the results of a running race * * * thereafter to be run * * *." The indictment was under R.S.
2:135-7, which provides that "any person who shall be a stakeholder of any sum of money or thing which is bet, staked or wagered upon any running, pacing or trotting race of horses, mares or geldings, * * * shall be guilty of a misdemeanor."
In that case, under the allegations of the indictment, and the provisions of the statute, the factual question was whether the defendants were "stakeholders." The opinion of Mr. Justice Case, pointed out that the proofs did not support the charge that "stakes" had been held, but that the evidence showed that a running account of losses and gains was kept, *Page 419 
and moneys due the alleged stakeholder were paid to him only after the race was run and the event decided.
Defendants, in the instant case, are charged with conspiring to violate the provisions of R.S. 2:135-3, wherein "bookmaking," not "stakeholding," is one of the offenses enumerated therein. Certainly, if the Legislature had intended to include both offenses in the same section, it would not have enacted separate sections. In State v. Morano, 134 N.J.L. 295 (E. A.
1946), in an opinion by Mr. Justice Heher, "bookmaking" was defined as "the making or taking and recording or registering of bets or wagers on races and kindred contests."
In the instant case, appellant Lennon was charged with maintaining and operating telephones for the purpose of receiving the bets of Pellecchia, which bets were, in fact, so received; with keeping an account of the bets and wagers made by Pellecchia; with advising Pellecchia of changes in numbers of telephones available for such bets; and with collecting from Pellecchia the sums due to Lennon for bets lost by Pellecchia, in cash or by check. Under the definition of "bookmaking" in Statev. Morano, supra, these acts clearly constitute the crime of "bookmaking."
Appellant, also, argues that an agreement to commit an offense, which can be committed only by the concerted action of the parties to the agreement, does not create a criminal conspiracy. The general rule, urged by appellant, although apparently not passed upon by the courts of our State, has been dealt with in various federal and state courts in a few instances. The rationale of these decisions is that where the offense itself requires the concerted action of the parties to the alleged conspiracy, the "conspiracy" between the parties, to commit the same offense, adds nothing, and is not indictable as a separate offense. In other words, where the law has denounced the aggregate action of a plurality as constituting a named crime, this may not be circumvented by calling such aggregate action by another name, i.e., conspiracy.
The rule appears to have its origin in crimes such as adultery and other sexual offenses, where joint action of several *Page 420 
persons is necessary. In this class of cases it seems to have been uniformly applied. State v. Law, 189 Iowa 910,179 N.W. 145 (Sup. Ct. 1920); Shannon v. Com., 14 Pa. 226
(1850); Miles v. State, 58 Ala. 390 (1877).
The rule has, likewise, been held applicable to bribery. U.S.v. Dietrich, 126 Fed. 664 (C.C.D. Neb. 1904); U.S. v.Sager, 49 Fed.2d 725 (C.C.A. 2, 1931); People v.Wettengell, 98 Col. 193, 58 Pac.2d 279 (1935); illegal rebating, U.S. v. N.Y. Cent. H.R.R. Co., 146 Fed. 298
(S.D.N.Y. 1906); receiving stolen goods, U.S. v. Zeuli,137 Fed.2d 845 (C.C.A. 2 1943).
However, where the substantive offense is statutory, most courts have given consideration to the essential statutory requirements of the offense. Where a crime, from a legal standpoint, may be committed by one person only, a conspiracy between two or more persons to commit that offense changes the character of the offense and the stated rule does not apply.Vannata v. U.S., 289 Fed. 424 (C.C.A. 2, 1923); Ex parteO'Leary, 53 Fed.2d 956 (C.C.A. 7, 1931); U.S. v. GrandTrunk R. Co., 225 Fed. 283 (D.C.W.D. of N.Y. 1915);11 Am.Jur. 556, § 20; 104 A.L.R. 1430.
In Vannata v. U.S., supra, the defendants were indicted for conspiracy in that Vannata conspired with one Farrell to sell whiskey to the latter. Judge Hough pointed out that the substantive offense was in the selling, not the buying. He said, at p. 428 of the opinion:
"Congress has taken half a transaction and labelled that as a crime; the other half is not condemned. * * * It follows that in respect of that half of the agreement between Vannata and Farrell which is a substantive offense only Vannata could commit it; consequently for purposes of prosecution, the sole substantive criminal can be joined with those who knowingly assist him in crime, in a conspiracy charge."
This limitation of the rule relied on by defendant is a valid and reasonable one which logically grows out of the reason for the rule, and is dispositive of the appellant's argument that the rule is applicable in the instant case. Admittedly, the bookmaking activity of Lennon was, in itself, *Page 421 
an indictable criminal offense. The conduct of Pellecchia, although unlawful, was not criminal, apart from its conspiratorial aspect. R.S. 2:57-1, provides:
"All wagers, bets or stakes made to depend upon any race or game, or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event, shall be unlawful."
The alleged conspiracy had among its objectives criminal activity by the defendant Lennon, but only unlawful activity by the codefendant Pellecchia. This combination was not indictable for bookmaking, and, therefore, there is no circumvention of the law when there is an indictment for conspiracy. The case ofPeople v. Purcell, 304 Ill. Appel. 215, 26 N.E.2d 153
(1940), cited by defendant, has little persuasive value. Betting on card games was prohibited by the Illinois statute and punishable with fine. Since the concerted action resulted in an indictable offense as to each of the participants, it was held that indictment should be for violation of the statute and not for conspiracy.
Nor is there any merit in defendant's argument that the necessary and essential allegations of the indictment were not proved. The uncontradicted testimony of Pellecchia was that he concluded an arrangement with Lennon, whereby Pellecchia could telephone his bets on horse races by calling certain Cliffside numbers provided by Lennon; that he placed bets by calling these, and other numbers given him by Lennon from time to time, almost daily for a period of four and a half years, beginning in the summer of 1944; that Lennon would come to Pellecchia's office, in Newark, periodically to pay Pellecchia the money due him as a result of said wagers; that, when Pellecchia started gambling more heavily, and his losses greatly increased, arrangements were made under which Pellecchia mailed checks to Lennon to cover his gambling losses to Post Office Box 120, Cliffside, New Jersey; and, for several years, Pellecchia received in his mail what amounted to balance sheets of his gambling activities from day to day. Various checks given by Pellecchia to Lennon were received in evidence. He testified that they were given to Lennon in *Page 422 
payment of his "losses on the horses." The endorsements on a large number of the checks were identified as those of the defendant Lennon.
The uncontradicted proof of the unlawful agreement and the overt acts in pursuance thereof, as charged in the indictment, fully and adequately sustain the verdict.
The judgment of conviction is affirmed.