45 N.J. Super. 110 (1957)
131 A.2d 571
THE STATE OF NEW JERSEY
v.
AIRCRAFT SUPPLIES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, MARTIN I. FALK AND JESSE L. BAILEY, DEFENDANTS.
Superior Court of New Jersey, Passaic County Court, Law Division (Criminal).
Decided April 26, 1957.
*113 Mr. Charles S. Joelson, Acting County Prosecutor, attorney for the State.
Messrs. Toolan, Haney & Romond, attorneys for defendants Aircraft Supplies, Inc. and Martin I. Falk.
Mr. Nicholas Martini, attorney for Jesse L. Bailey.
COLLESTER, J.C.C.
The defendants have moved before this court to dismiss an indictment charging them with the crime of conspiracy.
The indictment charges that the defendants conspired between March 21, 1951 and February 28, 1954 "to commit certain crimes and unlawful acts." It charges that the defendant Martin I. Falk, president of Aircraft Supplies, Inc., and one Charles H. Coburn (now deceased), vice-president of the defendant corporation, entered into an agreement with the defendant Jesse L. Bailey to pay secret commissions to the latter without the knowledge and consent of Bailey's employer, American Airlines, Inc., in return for which Bailey gave them information of the amounts of bids submitted to his employer by competing supply vendors, enabling Aircraft Supplies, Inc. to underbid such competitors.
The overt acts charged in the indictment allege that during said period Bailey was paid secret commissions of $46,333.79, and that as a result of information concerning *114 bids of competing vendors furnished to the co-defendants, Aircraft Supplies, Inc. secured purchase orders from American Airlines, Inc. totaling $1,174,031.70.
The defendants contend (1) that this court lacks jurisdiction, (2) the offense is a violation of the Disorderly Persons Act and is not a crime, and (3) the defendant corporation and Falk have statutory immunity from prosecution.
The State contends (1) that this court has jurisdiction, (2) the offense charged is common law conspiracy under N.J.S. 2A:85-1, and (3) the alleged immunity is not applicable.
In support of their motion the defendants allege that the offense charged in the indictment is the same offense proscribed by N.J.S. 2A:170-88, which is not a crime but a violation of the Disorderly Persons Act. Said statute provides:
"Any person who gives, offers or promises any gift or gratuity to any employee without the knowledge and consent of his employer, and with intent to influence his action with relation to his employer's business, and any employee who, without the knowledge and consent of his employer, requests or accepts any gift or gratuity, or any promise to make a gift or to do any act beneficial to himself, under an agreement or understanding that he shall act in any particular manner to his employer's business, is a disorderly person."
The offense charged under N.J.S. 2A:170-88 prior to January 1, 1952 was a misdemeanor under R.S. 2:114-11. It was downgraded by the Legislature to become a violation of the Disorderly Persons Act on said date.
The defendants contend that by downgrading the offense such legislative action bars prosecution of the offense under the statute authorizing prosecution of common law conspiracy under N.J.S. 2A:85-1 on which the present indictment is based. They point out that the "omnibus" statute, N.J.S. 2A:85-1, provides that:
"* * * all other offenses of an indictable nature at common law, and not otherwise expressly provided for by statute, are misdemeanors." (Italics mine.)
*115 It is their contention that since the Legislature has "otherwise expressly provided for" the prosecution of the offense under section 88 of the Disorderly Persons Act, the State cannot upgrade the offense to a misdemeanor by prosecuting the same as a conspiracy. It is noted that the indictment does not charge "statutory conspiracy" under N.J.S. 2A:98-1, but does charge common law conspiracy under N.J.S. 2A:85-1.
It is conceded that common law conspiracy was not preempted by the enactment of the statute relating to the crime of conspiracy. It remains a misdemeanor under N.J.S. 2A:85-1. State v. Loog, 13 N.J. Misc. 536 (Sup. Ct. 1935), affirmed State v. Henry, 117 N.J.L. 442 (E. & A. 1937); State v. O'Brien, 136 N.J.L. 118 (Sup. Ct. 1947).
In Johnson v. State, 26 N.J.L. 313, 321 (Sup. Ct. 1857), affirmed 29 N.J.L. 453 (E. & A. 1861), the former Supreme Court defined conspiracy at common law as follows:
"Conspiracy, at common law, is a confederacy of two or more persons wrongfully to prejudice another in his property, person, or character, or to injure public trade, or to affect public health, or to violate public policy, to obstruct public justice, or to do any act in itself illegal. 4 Black Com. 136, Chitty's note (31); 2 Russ. on Crimes 553."
This court cannot agree with the general principle that where the overt act charged in an indictment for common law conspiracy has been downgraded by the Legislature from the status of a crime to one of a violation of the Disorderly Persons Act, the accused cannot be prosecuted under N.J.S. 2A:85-1.
It is the corrupt agreement between the parties, the conspiracy itself, which constitutes the crime. The overt act set up in an indictment may or may not be in itself criminal; the conspiracy is the crime, and the overt acts may be relatively insignificant. State v. O'Brien, 136 N.J.L. 118, 123 (Sup. Ct. 1947). See also, State v. Western Union Tel. Co., 13 N.J. Super. 172 (Cty. Ct. 1951); *116 State v. Ellenstein, 121 N.J.L. 304 (Sup. Ct. 1938); State v. Bienstock, 78 N.J.L. 256 (Sup. Ct. 1909).
However, we are confronted in this case with a situation which is novel.
An examination of the allegations contained in the indictment discloses that the facts to be proved to warrant a conviction would be the same as those required to be proved to establish a violation of the offense condemned in N.J.S. 2A:170-88.
A careful reading of said statute, which describes an offense commonly designated as "commercial bribery," shows that such offense requires concert of action by two parties  the giver of the gratuity and the receiver of the gratuity. The statute further indicates that such acts, of giving and receiving, must be made under an agreement or understanding that the receiver shall act in some particular manner in reference to his employer's business.
A person cannot agree with himself, receive from himself, or give to himself. The concurrent acts of two persons are necessary to the act of agreeing, receiving or giving.
What is the offense charged in the indictment? In substance it charges that the defendants Aircraft Supplies, Inc., Martin I. Falk, and the deceased Charles H. Coburn were the givers of secret commissions to the defendant Jesse L. Bailey, the receiver, under an agreement that the receiver would act in a particular manner to his employer's business by furnishing to Aircraft Supplies, Inc., Falk, and Coburn information concerning bids submitted by competing supply vendors, thereby enabling Aircraft Supplies, Inc. to underbid the latter.
The question, under the facts presented, is whether or not an indictment for conspiracy will lie where the offense of commercial bribery charged requires the concerted action of the parties to the alleged conspiracy.
In State v. Lennon, 4 N.J. Super. 415 (App. Div. 1949), the appellant argued that an agreement to commit an offense (conspiracy to violate the gambling laws) which can be committed only by the concerted action of the parties to *117 the agreement does not create a criminal conspiracy. Judge Donges, in commenting upon this argument stated, 4 N.J. Super., at page 419:
"The general rule, urged by the appellant, although apparently not passed upon by the Courts of our State, has been dealt with in various federal and State Courts in a few instances. The rationale of these decisions is that where the offense itself requires the concerted action of the parties to the alleged conspiracy, the `conspiracy' between the parties, to commit the same offense, adds nothing, and is not indictable as a separate offense. In other words, where the law has denounced the aggregate action of a plurality as constituting a named crime, this may not be circumvented by calling such aggregate action by another name, i.e., conspiracy.
The rule appears to have its origin in crimes such as adultery and other sexual offenses, where joint action of several persons is necessary. In this class of cases it seems to have been uniformly applied. State v. Law, 189 Iowa 910, 179 N.W. 145, 11 L.R.A. 194 (Sup. Ct. 1920); Shannon v. Com., 14 Pa. 226 (1850); Miles v. State, 58 Ala. 390 (1877).
The rule has, likewise, been held applicable to bribery. United States v. Dietrich, 126 F. 664 (C.C.D. Neb. 1904); U.S. v. Sager, 49 F.2d 725 (C.C.A. 2, 1931); People v. Wettengell, 98 Col. 193, 58 Pac.2d 279, 104 A.L.R. 1423 (1935)." (Italics mine.)
On the facts presented in the Lennon case, supra, Judge Donges held that the foregoing rule did not apply, stating:
"* * * Where a crime, from a legal standpoint, may be committed by one person only, a conspiracy between two or more persons to commit that offense changes the character of the offense and the stated rule does not apply."
In the opinion affirming the decision of the Appellate Division (State v. Lennon, 3 N.J. 337 (1949)), our Supreme Court through Justice Heher took note of the "concert of action rule" and indicated it did not apply under the facts in that case. He stated:
"This is not a case for the operation of the principle that where it is impossible under any circumstances to commit the substantive offense without co-operative action, the preliminary agreement between the same parties to commit the offense is not an indictable conspiracy."
*118 The principle here involved, and referred to by both Judge Donges and Justice Heher in the Lennon case decisions, supra, is not new to our law. It was asserted in England in Regina v. Boulton, 12 Cox Cr. Cas. 3, and later in the leading case of United States v. Dietrich, 126 F. 664 (C.C., Neb. 1904). In the latter case, Dietrich, a Congressman was paid by one Fisher to procure an appointment as a postmaster, and they were indicted for conspiracy. Another statute provided that it was a crime for a member of Congress to take, receive or agree to receive money for procuring or aiding to procure any office from the government, and for any person to offer, or agree to give any money for procuring such office. In granting the motion to dismiss the indictment, the court said, at page 666:
"* * * The making of such an agreement is not a conspiracy within the terms of section 5440 [conspiracy] but is a several and substantive offense under section 1781 [bribery] upon the part of each of the parties * * *. As the transaction is stated in the indictment, it was Dietrich who agreed to receive the bribe, not Dietrich and Fisher, and it was Fisher who agreed to give the bribe, not Fisher and Dietrich. The charge is not that two or more persons agreed among themselves to corruptly obtain the aid of another, a member of Congress, in securing the appointment of some aspirant to a federal office, nor is it that two or more members of Congress agreed among themselves to obtain from another person a reward or compensation for their services or aid in securing such an appointment. Such an agreement would constitute a conspiracy to commit an offense against the United States, and, if followed by the doing of any act by one of the conspirators to effect its object, would be punishable under section 5440 [conspiracy]. * * * The agreement or transaction stated in this indictment was immediately and only between two persons, one charged with the intended taking and the other with the intended giving of the same bribe." (Italics mine.)
"* * * Unquestionably the agreement or transaction described consists of two distinct and several acts by separate persons. * * * In the very nature of things the two acts are several, not joint. The statute is in terms leveled against the several acts of the intended bribe taker and the intended bribe giver, and makes each a distinct or separate offense. While parts of one transaction, the two acts constitute several offenses, for which those by whom they are committed must respond severally, not jointly. Of course, all who join in each offense may be jointly indicted."
*119 Again, at page 667 the court stated:
"Concert and plurality of agents in such an agreement or transaction are, in a sense, indispensable elements of the substantive offenses, defined in section 1781 [bribery], of agreeing to receive a bribe and of agreeing to give one. A person cannot agree with himself, receive from himself, or give to himself. The concurrent and several acts of two persons are necessary to the act of agreeing, receiving, or giving. In this respect, agreeing to receive a bribe from another and agreeing to give one are unlike soliciting or offering a bribe, because the solicitation or offer may be the act of a single person and may occur without any concurrent act of another."
The rule set forth in the Dietrich case, supra, has been followed in United States v. New York Central & H.R.R. Co., 146 F. 298 (C.C. 1906); State v. Law, 189 Iowa 910, 179 N.W. 145, 11 L.R.A. 194 (Sup. Ct. 1920); People v. Keyes, 103 Cal. App. 624, 284 P. 1096, 1105 (Cal. Sup. Ct. 1930); United States v. Sager, 49 F.2d 725 (2 Cir. 1931); People v. Wettengel, 98 Colo. 193, 58 P.2d 279, 104 A.L.R. 1423 (Col. Sup. Ct. 1935). See also 2 Wharton's Criminal Law (12th ed.), sec. 1604; 11 American Jurisprudence, sec. 20. It has been cited with approval, although distinguished on the facts, in the following cases: Vannata v. United States, 289 F. 424 (2 Cir. 1923); United States v. Grand Trunk Ry. Co. of Canada, 225 F. 283 (D.C. 1915); United States v. Burke, 221 F. 1014 (D.C. 1915); McKnight v. United States, 252 F. 687 (8 Cir. 1918); United States v. Zeuli, 137 F.2d 845 (2 Cir. 1943), and Gebardi v. United States, 287 U.S. 112, 77 L.Ed. 206, 53 S.Ct. 35 (1932).
In People v. Wettengel, supra, the defendants were indicted for conspiracy to commit bribery. The court said, 58 P.2d, at page 280:
"* * * there is not, in the law, any such crime as conspiracy to commit bribery where the conspiracy is charged to have included both the prospective giver and the prospective receiver."
The rule  that where concert of action by the participants is necessary to the offense, conspiracy does not lie  was *120 invoked prior to the Dietrich case, supra, in State ex rel. Durner v. Huegin, 110 Wis. 189, 85 N.W. 1046, 62 L.R.A. 700 (Wis. Sup. Ct. 1901), where the court stated:
"The rule applies where the immediate effect of the consummation of the act in view, which is the gist of the offense, reaches only the participants therein, and is in such close connection with the major wrong as to be inseparable from it, as for instance, in the offense of adultery, or bigamy, or incest, or duelling. * * * Where an act is of itself an offense, as that of adultery, it cannot be made a different offense because of the circumstances that in the conception of it a precedent agreement by two persons is necessary * * *."
In United States v. Burke, 221 F. 1014, 1015 (D.C. 1915), the court said:
"It is well recognized that, in a crime such as bribery, where the participation of at least two persons is necessary and concert of action is essential to the offense, an indictment will not lie charging a conspiracy to commit such offense, where the indictment shows the completed offense."
In Gebardi v. United States, supra, a decision rendered by the United States Supreme Court in 1932, while distinguishing the facts in the case before it from the "concert of action" rule, approved the doctrine of the Dietrich case, supra, Justice Stone stating, 287 U.S., at page 122, 53 S.Ct., at page 37:
"* * * Where it is impossible under any circumstances to commit the substantive offense without co-operative action, the preliminary agreement between the same parties to commit the offense is not an indictable conspiracy either at common law * * * or under the federal statute."
Nor does the fact that in the instant case there were several "givers," namely, Falk and Coburn, and one "receiver," Bailey, alter the situation. Plurality of givers or receivers of a bribe does not change the substantive offense and make it a conspiracy merely because there is such plurality. In United States v. Sager, supra, the court said [49 F.2d 729]: "It does not change the substantive offense of bribery that there be several givers and a single taker."
*121 An indictment will not lie against the actors, the givers and the receiver, for conspiracy to commit the offense they actually did commit. Vannata v. United States, 289 F. 424 (2 Cir. 1923). See also 104 A.L.R. 1430-1431.
Effective January 1, 1952, the Legislature determined that the offense of commercial bribery should no longer be a crime but should henceforth be an offense, the violation of which would constitute the offender a disorderly person under section 88 of the Disorderly Persons Act. By enactment of the statute N.J.S. 2A:170-88, commercial bribery thereupon became an offense which may be described as one "otherwise expressly provided for by statute" under N.J.S. 2A:85-1.
The facts set forth in the indictment in this case, which must be proved to justify a conviction of the crime of conspiracy, are the same facts required to adjudge the defendants guilty of the offense condemned by section 88. It is apparent that the commission of the offense condemned by section 88 requires the concerted action of the same parties named in the indictment; that it is impossible to commit the offense proscribed by section 88 without concert of action on their part.
It is further apparent that the agreement between Martin I. Falk and Charles H. Coburn for Aircraft Supplies, Inc., the "givers," and James L. Bailey, the "receiver," was an element of the offense made unlawful by section 88; that the indictment for conspiracy charged a completed offense which violated section 88, and that the acts of the defendants constituted several substantive offenses proscribed by section 88.
It must be noted under the above mentioned decisions, that where the law has denounced the aggregate action of the parties as constituting the statutory offense, it may not be circumvented by calling such aggregate action by another name  conspiracy.
In determining the motion for dismissal, however, I am of the opinion that another factor should also be considered, namely, what was the legislative intent when the Legislature *122 downgraded commercial bribery (R.S. 2:114-11) from the status of a misdemeanor to that of violation of the Disorderly Persons Act (N.J.S. 2A:170-88)?
1. When classified as a misdemeanor the offense was punishable by a maximum prison sentence of three years (N.J.S. 2A:85-7, N.J.S.A.); as a violation of the Disorderly Persons Act, a maximum penalty of one year (N.J.S. 2A:169-4, N.J.S.A.). Was it the intention of the Legislature that a prosecutor could elect to prosecute the offense under the label of conspiracy, a misdemeanor, thereby subjecting the defendants upon conviction to a penalty of three years instead of one year?
2. The statute of limitation for prosecution of conspiracy, a misdemeanor, is five years (N.J.S. 2A:159-2, N.J.S.A.); for violation as a disorderly person, one year (N.J.S. 2A:169-10, N.J.S.A.). The indictment charges that the last overt act occurred on February 24, 1954, and said indictment was not returned until February 16, 1956. Was it the intention of the Legislature to permit a prosecutor, by utilizing the device of prosecution as a conspiracy, to circumvent the bar of the statute of limitation for prosecution under the Disorderly Persons Act?
3. A statute granting full immunity from prosecution or conviction to a person who may have committed the offense of commercial bribery and who reports the facts under oath to the prosecutor and gives evidence tending to the conviction of a joint offender of the statute, was a companion statute to R.S. 2:114-11 (R.S. 2:114-12). When the Legislature downgraded the offense, it enacted a similar companion statute, N.J.S. 2A:170-89. In the case sub judice, the defendant Martin I. Falk, relying on said statute, made and delivered such an affidavit to the prosecutor on May 24, 1955, prior to the return of the indictment.
Was it the intention of the Legislature to permit a prosecutor, by prosecution of the offense as a conspiracy, to avoid the immunity statute enacted as a companion to the offense downgraded to the Disorderly Persons Act?
*123 In my opinion, all three of the preceding questions must be answered in the negative.
I do not believe that the State, through the prosecutor, by calling the acts constituting commercial bribery a conspiracy, has the power to cause these defendants to be indicted and prosecuted for a different offense, and thus, upon a conviction, to subject them to liability of imprisonment for a longer term than provided under the Disorderly Persons Act. See United States v. New York Central & H.R.R. Co., 146 F. 298, 302-305 (C.C. 1906).
I am of the opinion that the statute of limitation for prosecution of violation of N.J.S. 2A:170-88 having run, time for the prosecution of the offense cannot be enlarged by an indictment charging the same offense to be the crime of conspiracy.
As heretofore stated, the Legislature granted immunity from prosecution to an informer who committed the offense of commercial bribery, whether the offense was a crime or a violation as a disorderly person. Such immunity statutes are evidence of an affirmative legislative policy to leave such an informer unpunished. I am of the opinion that it would be in contravention of such policy if the State can withdraw such immunity by prosecution of the offense as a criminal conspiracy. See Gebardi v. United States, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206 (1932); In re Vince, 2 N.J. 443, 451 (1949).
Accordingly, based on the foregoing reasons, it is the decision of this court that the indictment charging the crime of conspiracy must be dismissed. Counsel for the defendants will present an appropriate order pursuant to this opinion.